456 So.2d 679 (1984)
Rose Lee ALLEN
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HUMAN RESOURCES et al.
No. 84-CA-20.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 1984.
*680 Morris Bart, III, Wayne M. Babovich, New Orleans, for plaintiff-appellant.
Before BOUTALL, CHEHARDY and CURRAULT, JJ.
CURRAULT, Judge.
This appeal by plaintiff, Rose Lee Allen, arises from a judgment dismissing her action for malicious prosecution pursuant to a motion for a directed verdict granted to defendants, State of Louisiana through the Department of Health and Human Resources (DHHR), Marion Brenish, Claudette Harris and Robert Roy (all individually and as representatives of DHHR).
Plaintiff, Rose Lee Allen, filed the action for malicious prosecution in order to recover damages as a result of her arrest on September 1, 1979 for violation of LSA-R.S. 14:67, theft of food stamps valued at One Thousand Nine Hundred, Twenty-One Dollars ($1921). On November 13, 1978, the charge was amended to violation of LSA-R.S. 46:114.2, obtaining welfare by fraud. The arrest was based on information provided to the Jefferson Parish District Attorney's office by the State local food stamp office which alleged that between December 1, 1976 through July 31, *681 1977, while a food stamp recipient, Ms. Allen was living with Dwight Harris, who was gainfully employed; and, therefore, the entire amount of food stamps she received during this period was received fraudulently. The information regarding plaintiff's arrest, based on welfare fraud, was released for publication to the Times-Picayune by the DHHR. Subsequently, on January 10, 1978, the charges were dismissed by the district attorney for insufficient evidence.
As a result of the conduct of DHHR, plaintiff instituted a malicious prosecution action on August 31, 1979 against the above-named defendants. Prior to trial, the parties stipulated to a bifurcated trial on the issues of liability and damages and the liability portion was tried without a jury on August 6, 1982 and October 29, 1982. Upon the closing of plaintiff's case, defendants moved for a directed verdict. In judgment dated December 7, 1982, the court granted defendant's motion for directed verdict and dismissed plaintiff's action.
Consequently, plaintiff perfected this appeal of that judgment.
Appellant specifies the following errors:
(1) The trial judge erred in granting the motion for directed verdict since this was a bifurcated trial and plaintiff had only presented the liability portion of their case.
(2) Alternatively, the trial judge erred in granting the motion for directed verdict since plaintiff had presented evidence such that reasonable and fair-minded men could arrive at a verdict in favor of plaintiff.
(3) The trial judge erred in misapplying or disregarding the six essential elements of malicious prosecution as mandated in Eusant v. Unity Industrial Life Insurance Assn., 195 La. 347, 196 So. 554 (1940).
(4) The trial judge erred in not applying the presumption of want of probable cause and malice in favor of plaintiff as mandated in the case of Robinson v. Rhodes, 300 So.2d 249 (La.App. 2d Cir.1974), writ refused 303 So.2d 178 (La.1974).
As to appellant's first specification of error, she asserts that a directed verdict is appropriately granted only after plaintiff presents his case on both liability and quantum.[1] For this proposition, appellant cites LSA-C.C.P. Article 1810 and the case of Duplechin v. John Doe, Rimmer and Garrett, Inc., 365 So.2d 53 (La.App. 3d Cir. 1978). We disagree.
The portion of LSA-C.C.P. Article 1810 applicable to non-jury trials found in Article 1810(B) states as follows:
"Art. 1810
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence."
The jurisprudence interpreting the article contrary to appellant's assertion does not hold that plaintiff must be allowed to present evidence on both liability and quantum prior to rendition of a motion for dismissal. In Duplechin, the court specifically found that plaintiff was forced to rest his case without the introduction of testimony of two witnesses whose evidence related, albeit tangential, to the liability portion *682 of plaintiff's case. The First Circuit in Hysmith v. C.T. Coleson, 396 So.2d 393 (La. 1st Cir.1981) likewise reversed the directed verdict for the reason that the judge granted the motion prior to receiving a deposition related to liability. There the parties stipulated the deposition was to be produced subsequent to trial.
Distinguishing Duplechin, on its facts, the Third Circuit Court in Cloud v. State Farm Mutual Automobile Insurance Company, 440 So.2d 961 (La.App.Cir.1983) affirmed the judgment granting the motion following presentation of the evidence on liability and prior to the case on damages.
In our opinion, those cases properly reflect the intent of LSA-C.C.P. 1810(B). Thus, as appellant neither argues nor does the record indicate that the liability evidence was incomplete when the motion herein was granted, we find no error by the trial court in granting a motion for dismissal prior to a hearing on quantum.
Appellant argues secondly that the trial court erred by applying "the preponderance of the evidence" standard in deciding defendant's motion under LSA-C.C.P. Article 1810. In this regard, it is asserted that the correct standard is whether the evidence was such that reasonable and fair-minded men could not have arrived at a verdict in favor of plaintiff. For this proposition, appellant cites Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir.1979).
While we agree that the preponderance standard is inappropriate in jury cases, as was the case in Campbell, the jurisprudence holds that the proof required for cases tried before a judge is that of a "preponderance of the evidence." Murray v. Haspel-Kansas Investments, 395 So.2d 453 (La.App. 4th Cir.1981); Thomas v. Thom, 408 So.2d 442 (La.App. 1st Cir.1981) writ denied 412 So.2d 85 (La.1982); Bradley v. Hunter, 413 So.2d 674 (La.App. 3d Cir.1982) writ denied 415 So.2d 952 (La. 1982); Egle v. Kidd, 442 So.2d 669 (La. 1st Cir.1983). Thus, as this case was tried by the judge and not a jury, the trial judge did not err in applying the preponderance standard to plaintiff's evidentiary proof.
Applying the preponderance of the evidence standard to the following acts, we find no error by the trial court in granting the motion for dismissal.
Appellant asserts that the trial court erred in that the evidence sufficiently supports proof of the six essential elements of malicious prosecution. In reviewing the evidence, it is argued that the trial court erred in failing to apply the jurisprudential rule that a presumption of malice and want of probable cause exists where charges are dismissed in a criminal action prior to trial as elucidated in Robinson v. Rhodes, supra.
Louisiana law has long provided for the action for malicious prosecution and holds that the action lies in cases where there is a concurrence of the following elements:
(1) the commencement or continuance of an original criminal or civil judicial proceeding;
(2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding;
(3) its bona fide termination in favor of the present plaintiff;
(4) the absence of probable cause for such proceeding;
(5) the presence of malice therein; and
(6) damage conforming to legal standards resulting to plaintiff.
Eusant v. Unity Industrial Life Insurance Assn, supra; Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Hibernia National Bank of N.O. v. Bolleter, 390 So.2d 842 (La.1980). However, it should be noted that malicious prosecution suits are not looked upon with favor by Louisiana courts. Leaman & Co., Inc. v. Victory Iron Works, 411 So.2d 666 (La. App. 4th Cir.1982). In order to be sustained, "a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent...." Johnson v. Pearce, 313 So.2d *683 812 (La.1975); rehearing denied citing from Staub v. Van Benthuysen, 36 La.Ann. 467, 470 (1884).
In respect to the burden of proof in malicious prosecution cases, appellant is correct in asserting that where the charges made are dismissed by the prosecuting officer prior to trial, there is a presumption of want of probable cause and malice, with the result that defendant in the malicious prosecution action who instituted the prosecution has the burden of showing that he acted on probable cause and without malice. Robinson v. Rhodes, supra; Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975); McCoy v. Burns, 379 So.2d 1140 (La.App. 2d Cir.1980). Yet, proof of the lack of probable cause has been held not to depend merely upon the actual state of the facts, but upon the defendant's honest belief of the facts in making the charge against the plaintiff. Leaman & Co., Inc. v. Victory Iron Works, supra.
Our review of the record indicates that appellant sufficiently proved the existence of the first three elements necessary in malicious prosecution actions. Unquestionably, criminal proceedings were instituted against appellant for welfare fraud by Marion Brenish, an employee of DHHR. Further, the evidence clearly reveals that the charges were dismissed by the district attorney prior to trial. Upon this showing, under Robinson, the burden shifted to defendants to rebut the presumption of the last two elements of malice and lack of probable cause.
In this regard, the evidence indicates that appellant had been receiving food stamps since 1964 and that she regularly adhered to the department regulations of reporting persons in her household and income. In 1977, the department received an anonymous phone call alleging that between December 1, 1976 and July 31, 1977, an unreported person named Dwight Harris who was gainfully employed was residing in her household.
Appellant testified that she met Mr. Harris in December, 1976 while he was still married to but not living with his wife, Claudette Harris. She stated that two months later he asked her to marry him, but she refused. However, she continued to see Mr. Harris regularly. The testimony shows further that in February, 1977, he used her address as his residence which was reflected on his driver's license. Also during that time she received $120 from Mr. Harris, purportedly to store boxes, and an $1100 dining room set. Neither item was reported to DHHR. She claimed that he used her address and stored the boxes because he was living on a boat.
In June or July, appellant's case worker visited her to discuss the charges regarding Mr. Harris and questioned her about an incident involving the police. She denied that Mr. Harris resided at her home, but shortly thereafter voluntarily removed herself from the program. Appellant stated she informed her case worker that she was getting a job, but claims that the real reason was that Mr. Harris was moving in with her at that time. Despite her denial, the investigation proceeded. Eventually, appellant married Mr. Harris.
During the period in question, the facts show that Claudette Harris, Mr. Harris's estranged wife, was temporarily employed by the local food stamp office and that she knew that appellant and Mr. Harris were seeing each other socially. In fact, in this regard, an altercation occurred between the two women which resulted in appellant's arrest in May, 1977. Mrs. Harris denied making the anonymous phone call, but stated she did speak with appellant's case worker regarding Mrs. Allen's benefits much later.
Also during the period in question, Mr. Harris was employed by Apex Towing Company as a night watchman and was paid by the said company to reside upon and maintain the boat, M/V Charles K. He received a daily wage during the period of December 1, 1976 through July 31, 1977 for that purpose.
After a review of these facts, it is our opinion that the evidence produced in plaintiff's case in chief sufficiently rebutted the *684 legal presumption of malice and lack of probable cause. Consequently, as a factual matter, we find the trial court did not err in finding appellant failed her burden of proof by a preponderance of the evidence and in granting the motion for dismissal.
For the foregoing reasons, therefore, we hereby affirm the trial court judgment, dismissing plaintiff's case. Costs of this appeal are to be paid by appellant, Rose Lee Allen.
AFFIRMED.
NOTES
[1] In 1980, the legislature added Article 466 to the Code of Civil Procedure to provide for the separate trials of the issues of liability and damages. The article further provided inter alia, in Paragraph C, that the judgment rendered on the issue of liability is a final and appealable judgment.

In 1983, Article 466 was repealed, and the bifurcation provisions were relocated from the section on Actions to the section on Trials by addition of Article 1562. The provision dealing with the final and appealable nature of a judgment of liability found in Paragraph C of repealed Article 466 has been incorporated into C.C.P. Article 1915 in the section on Judgments.