|! BROWN, C.J.
In this malicious prosecution ease, defendant, Pauline Brown, appeals from a *140 judgment in favor of plaintiff, Earl Amos, in the amount of $5,051.20. Finding an adequate basis in the record to support the findings of the trial court, we affirm.

Facts

Earl Amos, who was married for 29 years to Pauline Brown’s sister, lived with his wife in Lincoln Parish on property described as the “Malone Estate.” When Ms. Brown retired from teaching in Oakland, California, she moved back to Lincoln Parish into the house next door to her sister and brother-in-law. At that time, around 1993, Ms. Brown stored some of her personal property (tools, a porch swing and an antique washing machine) in an outbuilding on the Amos’s property. The building was used by Mr. Amos as a shop. It is undisputed that Mr. Amos used Ms. Brown’s tools, a drill press and grinder, for years with Ms. Brown’s knowledge and tacit permission. He often carried the tools in his truck before returning them to the storage shed. Mr. Amos testified that he never used the swing or washing machine.
Exactly when Mr. Amos and his wife separated is not clear. At that time, Mr. Amos moved off the Malone Estate to nearby Athens, which is in Claiborne Parish; however, he still frequently used his shop at the Malone Estate. He also continued to use the drill press and grinder stored in the shop by Ms. Brown.
[aMs. Brown’s testimony concerning the arrest of Mr. Amos was vague as to specific dates, times and events; however, she wrote contemporaneous notes which were filed as defense exhibits. These notes state:
Jan. 8,1999
Stolen good [sic] of mine of Friday evening
1. Large Drill Press
2. Sander Stone Grinder
3. Red Porach [sic] swing
4. Old antique washing machine-green
5.
* * *
Called police on Jan 12, 1999 — 4:00’clock I went to Ruston on Friday morning Jan. 22, 1999, around 9:30 or 10:30 AM and pressed criminal charges against Earl Amos for taking my tools from his storage room without asking me about them. (Emphasis added).
[[Image here]]
I went to Homer and Athens on Monday May 26, 1999 to get the police escort to take a look at my tools.
On Friday May (blank) 1999, the police arrested Earl Amos and after he had brought two (2) of the tools to Ruston police station.
On Monday the man called me from Ruston police station ... that Earl Amos had brought down there and I went down on Tuesday to get the two tools that he had taken.
Ms. Brown testified that she had seen her tools in the back of Mr. Amos’s truck. She did not specify which tools or how she identified them; however, Mr. Amos testified that he had Ms. Brown’s drill press and grinder in his truck. Although the date of this sighting was not stated in her testimony, it is evident that this occurred during her police-escorted, May |a26, 1999, visit to Mr. Amos’s home in Athens. Documents in the record reflect, however, that Mr. Amos was arrested on April 29, 1999, and that he posted a $2,000 bond. Mr. Amos said that these events either coincided with or happened shortly after his separation from his wife.
Mr. Amos testified that after his arrest, he went to his shop and the porch swing was still there; however, the washing machine was missing. He testified (without *141 objection) that his son told him that the washing machine was in Ms. Brown’s house. He said that both he and his former wife had a key to the shop and that the shop was sometimes unlocked. Mr. Amos explained that he continued to use the shop after his separation from his wife and that for years he had used Ms. Brown’s tools which he would at times carry in his truck. On cross-examination, he testified:
Q: Now the items that you returned that you brought to the sheriffs office, did you — when did you plan on returning those items?
A: When I got through with them.
Q: Now prior to the — someone contacting you from the sheriffs office, weren’t you aware that Ms. Brown had been trying to get in contact with you concerning items that were missing out of the storage area that you had?
A: No, she — if she wanted to contact me, she know (sic) how to contact me.
Mr. Amos testified that Ms. Brown never contacted him about the tools. Ms. Brown’s testimony simply does not support her attorney’s argument that she asked Mr. Amos to return the tools. She did not testify that she ever spoke with Mr. Amos or that she left any messages with anyone for Mr. Amos concerning the tools, swing or washing machine.
|4Mr. Amos’s arrest was reported in the newspaper. In October 1999, the Lincoln Parish DA filed a bill of information charging Mr. Amos with misdemeanor unauthorized use of a movable of a value of less than $1,000. The bill specifically charged that he “did intentionally take and use a movable, to wit: miscellaneous Tools, a Porch Swing and Antique Washing Machine.” (Emphasis added). Mr. Amos hired an attorney (at a cost of $1,000) and pled not guilty to the charge. The minutes show that Ms. Brown did not appear for trial on January 12, 2000. The trial was reset for May 10, 2000. The court minutes for May 10, 2000, state that “[u]pon oral motion of the District Attorney, Court ordered this matter nolle pro-sequied per victim no show.”
After the charge was dismissed, Mr. Amos hired a second attorney (at a cost of $1,000) and had the charge expunged from his record. He testified that he missed two days of work (8 hour days at $15.70 per hour) due to his court appearances and that his bond cost $300.
On October 12, 2000, Mr. Amos filed this malicious prosecution lawsuit against Ms. Brown. The case was tried on October 1, 2001, with the only witnesses being Mr. Amos and Ms. Brown. The trial court found in Mr. Amos’s favor and awarded him $2,500 in general damages and $2,551.20 in special damages. Ms. Brown now appeals contending that no malice was shown because she requested that Mr. Amos return the tools and he never responded, that it was the district attorney’s decision that probable cause existed to file the charge of theft against Mr. Amos, and that she was never contacted in connection with the charge or notified of the trial date.
| sDiscussion
A delicate balance exists between society’s interest in the efficient enforcement of criminal laws and the individual’s interest in being free from unjustified and oppressive criminal prosecution. Accordingly, to prevail in a malicious prosecution case, a plaintiff must prove that defendant caused the initiation of criminal proceedings against plaintiff; that there was a bona fide termination of that criminal proceeding in favor of plaintiff; that defendant acted without probable cause and with malice; and that plaintiff suffered *142 damages. Miller v. East Baton Rouge Parish Sheriff’s Department, 511 So.2d 446 (La.1987); Goodman v. Spillers, 28,933 (La.App.2d Cir.12/23/96), 686 So.2d 160, writs denied, 97-0225, 97-0423 (La.03/27/97), 692 So.2d 393, 400.

Initiation of Criminal Proceedings

Although Ms. Brown’s testimony was vague, her contemporaneous notes clearly established that she caused criminal proceedings to be filed against Ms. Amos who suffered damages therefrom. She did not call anyone from either the sheriffs or district attorney’s office to contradict her own notes that she “pressed criminal charges on January 22, 1999.” There is nothing in the record that indicates that the sheriff or district attorney conducted any type of investigation. Mr. Amos was simply telephoned by a deputy and told to come to the sheriffs office to be arrested. This occurred on April 29, 1999. Thereafter, on May 26, 1999, Ms. Brown went in search of her property and saw her tools in the back of Mr. Amos’s truck. The record shows no independent inquiry by the sheriff or district attorney; | fi rather, they relied on facts provided by Ms. Brown. Thus, causation was shown. See Craig v. Carter, 30,625 (La.App.2d Cir.09/23/98), 718 So.2d 1068.

Bona Fide Termination

The court minutes show that the criminal charge against Mr. Amos was dismissed by the prosecution “per victim no show.” Recently, the supreme court stated:
The obvious purpose of the “bona fide termination” requirement in malicious prosecution cases is that the underlying litigation should be brought to a conclusion on the merits before a malicious prosecution suit based on the underlying litigation is allowed to proceed. It has been held that this requirement is not satisfied when the merits of the underlying proceeding have not been reached. See Irby v. Harrell, 140 La. 828, 74 So. 163 (1917) (abandonment of prosecution as a result of a compromise is not the same as a termination of litigation in plaintiffs favor).
Savoie v. Rubin, 01-3275, 01-3276 (La.06/21/02), 820 So.2d 486, 488.
Although jeopardy did not attach and charges could have been reinstated, under our jurisprudence a nol pros implies a “bona fide” termination in favor of Mr. Amos, that is, one that indicates his innocence.[1] The nol pros had not been obtained as part of a bargained for dismissal in return for payment or restitution. It was dismissed because of abandonment by the complainani/victim. Thereafter, the charge was expunged from Mr. Amos’s record. Once Mr. Amos submitted the court minutes showing abandonment of the charge by Ms. Brown, the burden shifted to Ms. Brown 17to present evidence to the contrary, and the issue became one for the trier of fact to decide. All Ms. Brown offered was vague testimony and a denial that she received notice of the trial setting. The trial court found Ms. Brown’s testimony “difficult to accept given the official court minutes introduced into evidence.” Ms. Brown did not present evidence from the District Attorney’s office or the record in the criminal case to show whether notice was given. Arguably, there is a presump *143 tion of regularity of official acts where there is no independent evidence to the contrary. The record, therefore, supports a finding that a bona fide termination in Mr. Amos’s favor occurred.

Probable Cause and Malice

The crucial determination is whether Ms. Brown had an honest and reasonable belief in the guilt of Mr. Amos at the time she pressed charges. Jones v. Soileau, 448 So.2d 1268, 1272 (La.1984). At trial, Ms. Brown testified that she did not have Mr. Amos arrested and said she did not remember telling the police that Earl Amos stole the items. She stated she saw some of her tools in his truck and presumed that he took everything, including the porch swing and antique washing machine. On the other hand, Mr. Amos testified that when he was arrested the swing was still in the shop and the washing machine was in Ms. Brown’s house. Ms. Brown’s testimony that she did not tell the police that Mr. Amos stole her things and had no knowledge of the charges is contradicted by her own personal notes which she submitted into evidence.
|sThe trial court accepted Mr. Amos’s testimony that he had been using Ms. Brown’s tools for years with her permission. As far as can be determined from the testimony, Ms. Brown agreed that Mr. Amos had been using the tools with her permission during the time Mr. Amos lived on the Malone Estate. She did not testify that she ever revoked her permission for Mr. Amos to use the tools by telling him either to return the tools or to stop using them after the divorce.
According to Ms. Brown’s notes and the arrest record, on January 7, 1999, she determined that her things were stolen; on January 22 she pressed criminal charges against Mr. Amos with the police (sheriff); Mr. Amos was arrested on April 29; but it was not until May 26 she looked in Mr. Amos’s truck, saw her tools and called the sheriff.
Malice exists where the charge is made with reckless disregard to whether it is false or not. Whittington v. Gibson Discount Center, 296 So.2d 375 (La.App. 2d Cir.1974). Although the exact time is unclear, the trial court found that Mr. Amos voluntarily returned the tools to the sheriff when contacted by that office. Ms. Brown admitted that she let Mr. Amos use the tools, and she never withdrew her consent, nor did she request that he return the tools he was using at the time she pressed the criminal charges or thereafter when he was arrested. The court characterized Ms. Brown’s behavior as wanton and reckless, and, for these reasons, concluded that Ms. Brown failed to overcome the presumption of malice and lack of probable cause.
In Miller, supra, at 453, the court defined the element of malice:
IflAny feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice.... But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to “tie up the mouths” of witnesses in another action, or as an experiment to discover who might have committed the crime.... Malice may be inferred from the lack of probable cause or inferred from a ñnding that the defendant acted in reckless disregard of the other person’s rights. Citations omitted. (Emphasis added).
*144 A reasonable basis exists for the trial court’s finding of a lack of probable cause and malice.

Conclusion

Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through Department of Transportation and Development; 617 So.2d 880 (La.1993).
We conclude that there is an adequate and reasonable basis in the record to support the trial court’s findings. The judgment of the trial court is affirmed. Costs of this appeal are assessed to Pauline Brown.
AFFIRMED.

. See cases holding that a dismissal by the district attorney creates a presumption of the lack of probable cause. See McCoy v. Burns, 379 So.2d 1140 (La.App. 2d Cir.1980); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975); Robinson v. Rhodes, 300 So.2d 249 (La.App. 2d Cir.1974), writ refused, 303 So.2d 178 (La.1974). We note that in the Savoie v. Rubin, supra, the supreme court appears to disapprove of this approach.