# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30178

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2014

Lyle W. Cayce
Clerk

SCOTT D. LEMOINE; BEVERLY P. LEMOINE,

Plaintiffs–Appellants,

v.

ELIZABETH P. WOLFE,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-1377

Before JONES, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

This malicious prosecution claim, brought by Scott and Beverly Lemoine, arises out of the criminal cyberstalking prosecution of Scott Lemoine for posting internet messages that were critical of his friend Daniel Hoover's sister; Hoover's former wife, Kelly Wolfe; and Kelly Wolfe's mother-in-law, Judge Elizabeth P. Wolfe. The district court granted summary judgment on the basis that the Lemoines had failed to demonstrate that Elizabeth P. Wolfe

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

was a legal cause of his prosecution. We reverse in part and certify an unresolved question to the Louisiana Supreme Court.

## I

Because the Lemoines were the non-movants in summary judgment proceedings, we consider the facts in a light most favorable to them. Scott Lemoine reconnected with his childhood friend Daniel Hoover (Daniel) in late 2008. Daniel had suffered an aneurysm four years earlier and was a quadriplegic without the ability to speak. Kelly Wolfe (Kelly) had divorced Daniel on January 1, 2007. After communicating with Daniel, Lemoine authored posts on a local television news website and on Daniel's Facebook page that criticized Kelly concerning certain financial matters, referred to Daniel's complaint that Kelly had denied him access to their child, and included a vague suggestion that Kelly's mother-in-law, Judge Elizabeth P. Wolfe (Judge Wolfe), a Louisiana state district judge, had manipulated the judicial system for the benefit of Kelly. The posts said with regard to Judge Wolfe:

> [W]hen she said 'I do' to her third husband, a fireman, she also became the daughter-in-law of a state district judge.
> . . . .
> . . . Ultimately, we hope that by exposing this story it will attract the attention of someone who's willing and able to fight for Daniel's best interest, which considers the involvement of a few crooked district judges . . . .

After the publication of these posts, Lemoine and Lori Hoover Barrient (Lori) engaged in an internet dialogue in which they debated the propriety of Kelly's actions. In September 2009, Lori complained about Lemoine to Detective Toby Aguillard of the Tangipahoa Parish Sheriff's Office, stating that she felt harassed. In November 2009, Kelly also contacted Aguillard, telling him that she "was being threatened and harassed by Internet postings that

were authored by Scott Lemoine and others." Aguillard called Lemoine, who lived in Arizona, and directed Lemoine to stop posting on the internet and inquired when Lemoine would be in Louisiana. Lemoine told him that he might travel there in December.

Later that month, Judge Wolfe contacted Detective Aguillard to arrange a meeting. At the meeting she expressed that she was upset by Lemoine's posts on the internet. She also suggested to Aguillard that Lemoine's conduct satisfied the elements of the misdemeanor of cyberstalking. Judge Wolfe indicated that Aguillard had probable cause to arrest Lemoine and suggested that he do so. In Aguillard's deposition, he was asked,

> Q. But you are now talking to a state judge, in her office, and she is letting you know, she thinks there is probable cause to arrest him?
> A. Yes.
> Q. And—in no uncertain terms?
> A. Yes.
> . . . .
> Q. You came away from that meeting knowing Judge Wolfe wanted Scott Lemoine arrested for cyberstalking?
> A. Yes, As—as was the case with all the victims.

In December, Detective Aguillard secured an arrest warrant for Lemoine for violations of Louisiana's cyberstalking statute and invited Lemoine, who had returned to Louisiana to see his family, to visit the police station. Upon arrival, Aguillard placed Lemoine under arrest. He asked Lemoine to execute a waiver of his rights but Lemoine refused. Aguillard then interrogated Lemoine. Lemoine recorded this conversation with a recorder concealed on his person. During the interrogation, Aguillard stated, "I've looked into a lot of this, much more than you could imagine. . . . Because you've involved these judges, you see, and that puts pressure on me." Aguillard also rebuked Lemoine for his posts on Facebook and warned him not to post further. Aguillard stated that Lemoine could understand these admonishments as "an

order from the Court." Aguillard later discounted some of these statements by claiming that he had been lying during the conversation as part of an interrogation strategy. He also later stated that the decision to arrest Lemoine was his decision alone.

After Aguillard had interrogated Lemoine, Aguillard called David Wolfe, the husband of Judge Wolfe, requesting that he ask his wife to assist the Detective in setting bail for Lemoine. Aguillard said:

> Listen, we've got this guy in custody now . . . . Well, I was hoping that maybe your wife could assist with something, maybe make a call to somebody for that.

Aguillard discussed the case with David Wolfe explaining that it was "just one count of cyber stalking is what I've got him on." In his deposition, Aguillard admitted that he "wanted [the husband] to transmit a message to the Judge." The conversation between Aguillard and David Wolfe ended with Aguillard saying that "Well, whenever I get him booked in and into the jail and I figure out who the duty judge is, I'll give you a call back." Once Aguillard learned the identity of the duty judge, Aguillard called David Wolfe to relay the information, with the understanding that Judge Wolfe could contact the duty judge. At his deposition, Aguillard said that his purpose in calling David Wolfe was "to see if his wife could get a higher bond put on [Lemoine]."

The duty judge, Robert Morrison, initially set Lemoine's bail for the misdemeanor charge at $25,000. Judge Morrison then quadrupled the bail amount after receiving a phone call from a person whose identity he could not remember, though he stated that he "would have remembered" if the identify of that caller had been Judge Wolfe. Judge Morrison also imposed the additional bail requirement that Lemoine wear a GPS tracking bracelet. Lemoine alleges that he would have been able to post bail but instead was indefinitely incarcerated because there were no GPS tracking bracelets

available.   Following his arrest, Lemoine, who had been under federal supervised release on an earlier, unrelated charge, had his conditional discharge revoked and was recommitted to the custody of a federal medical center for the next ten months.

Two days after his arrest for cyberstalking, Lemoine was also charged with the additional count of soliciting Judge Wolfe's murder.  The charge for solicitation of murder was based on an accusation by another inmate at the jail, Brian Register.  Register told jail authorities that Lemoine had solicited Judge Wolfe's murder and produced fabricated drawings and letters that he ascribed to Lemoine.  After giving these materials to authorities, Register wrote a letter to Judge Wolfe, on January 5, 2010, identifying himself as the person who "set up" Lemoine.  In this letter, Register asked Judge Wolfe, "What should [I] tell [the police]?"  Register had a criminal case pending in Judge Wolfe's court at the time.  It is disputed what action Judge Wolfe took after receiving this letter.  Lemoine alleges that Judge Wolfe sent Nick Muscarello, a federal public defender, to meet with Register about these allegations.  Judge Wolfe denies this, stating that she only told Muscarello to advise his client not to write her again.  On January 11, 2010, Register sent a second letter to Judge Wolfe thanking her for sending Muscarello to meet with him, requesting Judge Wolfe's assistance in having his bond reduced, and stating that he could "prove a murder that happened a few years ago."  Judge Wolfe avers that she gave copies of both letters to the District Attorney.  The originals of the letters were placed at some point into Register's criminal file, but no copies of the letters were incorporated into Lemoine's solicitation for murder file.  Lemoine's stepfather found the letters in Register's file and provided copies to Lemoine's attorney.  That attorney provided them to the prosecutor.   Additionally, in the solicitation of murder prosecution, the incriminating drawings and letters produced to authorities by Register were

subsequently determined by two handwriting experts, one retained by Lemoine and one retained by the District Attorney, to have been authored by Register and not Lemoine.

Lemoine was formally charged by information with cyberstalking and solicitation of murder on March 12, 2010. Lemoine's counsel filed a motion of discovery in the cyberstalking case, and Judge Wolfe signed the order setting a hearing on the motion. She maintains that she signed this order in error. On August 24, 2010, a probable cause hearing was held on the solicitation of murder charge, and the presiding judge found that there was no probable cause to believe Lemoine committed the charged offense. The presiding judge also reduced the bail on the cyberstalking charge to the original amount of $25,000 and removed the GPS bracelet condition. In September 2010, the District Attorney dismissed the cyberstalking charge.[1] As a result, Lemoine was released from custody on October 13, 2010.

The Lemoines brought suit in federal court raising multiple claims against multiple defendants arising out of these events. The claims included a Louisiana tort claim for malicious prosecution against Judge Wolfe. Judge Wolfe moved for summary judgment on the ground that the Lemoines had failed to establish all of the elements of the malicious prosecution cause of action. The district court granted summary judgment for Wolfe on the basis that the Lemoines had failed to show that there was a genuine issue of material fact on the element of legal causation. The Lemoines filed a Rule 59(e) motion to alter or amend the judgment contending that the district court had granted summary judgment on a basis not sufficiently raised by the moving party

---

[1] Citing LA. CODE CRIM. PROC. ANN. art. 691, the motion to dismiss stated, "Due to information received since the filing of the bill of information . . . there is insufficient credible, admissible, reliable evidence remaining to support a continuation of [this prosecution]."

because Judge Wolfe had primarily moved for summary judgment on the issue of bona fide termination and not causation. The district court denied this motion. The Lemoines filed a timely notice of appeal.

## II

We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the district court.[2] Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "When assessing whether a dispute [as] to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[4] All evidence is reviewed in a light most favorable to the non-moving party, and all reasonable inferences are drawn in their favor.[5]

As a federal court sitting in diversity, we look to the final decisions of the state's highest court to determine state substantive law.[6] "If a state's high court has not spoken on a state-law issue, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise."[7] We review a federal district court's determination of state law de novo.[8]

---

[2] *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010).

[3] FED. R. CIV. P. 56(a).

[4] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).

[5] *Id.*

[6] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

[7] *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013) (internal quotation marks omitted).

[8] *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1892 (2014).

No. 13-30178

## III

The Lemoines first argue that the district court improperly granted summary judgment sua sponte, on an issue not properly presented to the district court. The district court granted summary judgment on the basis that the Lemoines had not shown the existence of a genuine issue of material fact as to whether Judge Wolfe was a legal cause of the criminal prosecution, one of the elements of a malicious prosecution claim. The Lemoines argue that Judge Wolfe did not move for summary judgment on this basis. They contend that Judge Wolfe moved for summary judgment solely on the ground that the Lemoines had failed to satisfy a separate element of their claim: bona fide termination in Scott Lemoine's favor. The Lemoines raised this issue before the district court in a Rule 59(e) motion to amend or alter the judgment. The district court rejected this motion because "[p]laintiffs were on notice that they needed to respond to each element of the malicious prosecution claim in order to survive summary judgment."

Generally, if a district court "relie[s] on grounds not advanced by the moving party as a basis for granting summary judgment . . . its judgment cannot be upheld on appeal."[9] An exception exists when the district court gives the non-moving party ten days' notice that it is considering granting summary judgment on those grounds.[10] The district court did not give the Lemoines any notice of its intent to grant summary judgment on the issue of legal causation. Accordingly, the issue of legal causation must have been raised in a manner

---

[9] *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1191-92 (5th Cir. 1987).

[10] *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007).

sufficient to put the Lemoines on notice that failure to present evidence on the issue could be grounds for summary judgment.[11]

In her motion for summary judgment, Judge Wolfe set forth the six elements of a Louisiana malicious prosecution claim that the Lemoines would need to prove at trial. After conceding the first element, that Scott Lemoine was arrested, the motion states that, "[t]he defendant sets forth that the plaintiffs lack competent evidence to show proof of the remaining [five] elements." The motion then states that "it is *most clear* that plaintiff cannot establish the third element of the claim—that there was a 'bona fide termination in favor of the present plaintiff.'" The rest of the motion discusses only the "bona fide termination" element and does not discuss the other four elements.

This passing discussion was sufficient to put the Lemoines on notice that they needed to bring forth evidence on every element of their claim. The Lemoines rely primarily on *John Deere Co. v. American National Bank, Stafford*.[12] In *John Deere*, a defendant moved for summary judgment solely on the theory that a prior court judgment had a res judicata effect, barring the plaintiff's claims.[13] But the district court granted summary judgment on an unargued theory: that the plaintiff had produced no evidence of damages.[14] On

---

[11] *See John Deere*, 809 F.2d at 1191-92; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").

[12] 809 F.2d 1190 (5th Cir. 1987).

[13] *John Deere*, 809 F.2d at 1191.

[14] *Id.*

appeal, this court reversed the summary judgment because the damages issue "certainly was not raised by the [defendant]."[15]

The present case is not analogous. In *John Deere*, the district court granted summary judgment on a tangential theory that neither party had even cursorily asserted. Here the court granted summary judgment on the basis that the Lemoines had failed to produce evidence on an essential element of their claim. Further, this was a ground that the moving party briefed, even if it was a theory that was only scarcely briefed. While the bulk of the motion focused on the termination element, the motion stated that the Lemoines had failed to present competent evidence to show proof of five of the six elements, including causation. This put the Lemoines "on notice that [they] had to come forward with [their] evidence."[16] The district court did not err by granting summary judgment on a legal basis that was different from the one primarily advanced by Judge Wolfe.

## IV

The Lemoines' second argument on appeal is that the district court erred in granting summary judgment because they produced sufficient evidence to raise genuine issues of material fact on each element of a Louisiana malicious prosecution claim. Under Louisiana law, a malicious prosecution claim arising from a criminal proceeding has six elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against the plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice

---

[15] *Id.*

[16] *Catrett*, 477 U.S. at 326.

therein; and (6) damages to the plaintiff.[17]  Judge Wolfe concedes that the first element is satisfied, but contests the remaining five elements.  We conclude that the Lemoines have presented sufficient evidence on four of those five elements to avoid summary judgment and certify a question to the Louisiana Supreme Court on the remaining element: whether the dismissal of Scott Lemoine's prosecution constituted a bona fide termination in his favor.  Before addressing the issue of certification we resolve the legal contentions regarding the other elements of the claim.

## A

The district court held that the Lemoines had failed to raise a genuine issue of material fact as to whether Judge Wolfe was a legal cause of the commencement of the criminal proceeding against Scott Lemoine.  In discussing this issue, the district court simply stated that, "Judge Wolfe's actions with regard to malicious prosecution did not meet the second element [legal causation]."

Under Louisiana law, when a malicious prosecution claim is brought against a civilian–complainant, "[a]n independent investigation by law enforcement of [the complaint] may break the chain of causation between the complaint and the ultimate commencement of a criminal proceeding."[18] Accordingly, citizens who "merely report[] their observations to police officers," spurring the police officers to conduct their own investigation, are not usually the legal cause of criminal prosecution.[19]  But if the "record shows broad

---

[17] *Miller v. E. Baton Rouge Parish Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987).

[18] *LeBlanc v. Pynes*, 46,393 (La. App. 2 Cir. 7/13/11); 69 So. 3d 1273, 1281; *see also Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06); 935 So. 2d 669, 690 n.20.

[19] *Banks v. Brookshire Bros., Inc.*, 93-1616 (La. App. 3 Cir. 6/1/94); 640 So. 2d 680, 682.

reliance on the facts provided by the [civilian–complainant] and only limited independent inquiry by the police," that is enough to show legal causation.[20]

If Judge Wolfe were situated merely as an ordinary civilian in this case, she could not be sued for malicious prosecution under Louisiana law. There was not broad reliance on the facts provided by Judge Wolfe. Judge Wolfe was one of three individuals who complained to Detective Aguillard about Lemoine's internet posts. Further, Aguillard had the opportunity to review the internet posts himself and admitted that he conducted his own investigation and made the decision to arrest Lemoine on his own.

But Judge Wolfe did not act as an ordinary civilian in this case. Rather, the Lemoines have presented substantial circumstantial evidence that Judge Wolfe used her position as a state court judge to influence the direction and scope of the police investigation and to ensure that Lemoine was not only arrested but was hampered in making bail. During his interrogation of Scott Lemoine, Aguillard admitted that Lemoine's actions "put pressure on [Aguillard]" because he had "involved these judges." Aguillard also testified that Judge Wolfe made it clear to him, "in no uncertain terms" that (1) she wanted Lemoine arrested; and that (2) in her judgment as an officer of the law, there was probable cause to charge him. Once Aguillard arrested Lemoine, he called Judge Wolfe's husband twice to inform him of the status of the case and to seek assistance in setting a bond that would make it more difficult for Lemoine to make bail. Aguillard also warned Lemoine that he needed to refrain from posting internet messages on Daniel's behalf and could interpret this warning as an "order from the Court." At that time, the only court he could have possibly been referring to was the one presided over by Judge Wolfe.

---

[20] *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1070-71.

Read together, there is at least a plausible understanding of the facts that absent Judge Wolfe's active involvement in the investigation and prosecution of Scott Lemoine, as well as the perceived pressure applied by Judge Wolfe, Aguillard would not have prosecuted this case. It is true that Aguillard may have conducted a "limited independent inquiry" into the facts of the case. But it is only an *independent* investigation that severs the chain of causation that links a complainant to a prosecution. Here, the evidence—from the determination of probable cause to the interrogation to the setting of the bail—creates a genuine issue of material fact as to whether Aguillard's investigation was independent of Judge Wolfe's influence. Complainants may be liable under a theory of malicious prosecution if they improperly motivate a prosecution without probable cause or apply political pressure to bring about such a wrongful prosecution.[21] The Lemoines have presented such evidence. The Lemoines have presented sufficient evidence to cast doubt on the independence of Aguillard's investigation in order to avoid judgment as a matter of law on this issue.[22]

---

[21] *See*, *e.g.*, *Hartman v. Moore*, 547 U.S. 250, 262-63 (2006) (stating that plaintiff could overcome presumption of independent judgment by prosecutor by showing pressure by police and citing favorably *Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989) (plaintiff seeking damages incident to her criminal prosecution would have to show that police unduly pressured or deceived prosecutors), *Dellums v. Powell*, 566 F.2d 167, 192-93 (D.C. Cir. 1977) (where allegation of misconduct is directed at police, a malicious prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by police)); *Whittington v. Maxwell*, No. 08-1418, 2011 WL 1304468, at *1, *5 (W.D. La. Mar. 31, 2011) (denying summary judgment on a malicious prosecution claim because there was evidence that the defendant used his influence as the sheriff to get the plaintiff, a former political opponent, arrested).

[22] *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014) ("When assessing whether a dispute [as] to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence.").

No. 13-30178

## B

The Lemoines have presented sufficient evidence to avoid summary judgment on the issue of whether the investigation and arrest of Scott Lemoine lacked probable cause. "[T]he crucial determination in regard to the absence of probable cause is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff."[23]　"The appearances must be such as to lead a reasonable person to set the criminal process in motion; unfounded suspicion and conjecture will not suffice."[24]　"When determining whether a reasonably cautious person would have believed that a violation occurred, we consider the expertise and experience of law enforcement officials."[25]　Finally, if "the prosecuting officer has dismissed the charge . . . there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant."[26]

The district attorney dismissed the cyberstalking charge because there was "insufficient credible, admissible, reliable evidence remaining to support a continuation of the prosecution."[27]　This creates a presumption that the prosecution was without probable cause, a presumption that Judge Wolfe has failed to rebut.　In her briefing and at oral argument, Judge Wolfe focused

---

[23] *Smith v. State ex rel. Dep't of Admin.*, 96-0432 (La. App. 1 Cir. 5/9/97); 694 So. 2d 1184, 1188.

[24] *Miller v. E. Baton Rouge Parish Sherriff's Dep't,* 511 So. 2d 446, 452-54 (La. 1987).

[25] *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000) (evaluating probable cause in a Louisiana malicious prosecution claim).

[26] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965 ("[W]hen the prosecution dismisses a charge, there is a presumption of want of probable cause . . . .").

[27] *See* LA. CODE CRIM. PROC. ANN. art. 691.

14

solely on the fact that an independent magistrate signed the arrest warrant. But an arrest warrant is not a cloak of invulnerability for a complainant in a malicious prosecution case. If the existence of an arrest warrant immunized a wrongful complainant then there would be extremely few viable malicious prosecution cases. The issuance of the arrest warrant, by itself, is insufficient to rebut the Louisiana presumption that there was not probable cause when Judge Wolfe recommended to Detective Aguillard that he arrest Scott Lemoine.

But even if we agreed that the issuance of an arrest warrant rebutted the presumption of a lack of probable cause, there is ample evidence in the record to create a genuine issue of material fact as to whether Judge Wolfe acted unreasonably and without an honest belief of the guilt of Scott Lemoine. As a state court judge, we consider Judge Wolfe's expertise and experience in determining whether a reasonable person in her position would have believed there was probable cause.[28] Detective Aguillard testified in his deposition that Judge Wolfe made it plain to him, "in no uncertain terms," that she believed there was probable cause to arrest Scott Lemoine.[29] Yet in her deposition, Judge Wolfe was unable to articulate which count of cyberstalking that she believed Lemoine had committed nor was she able to point to a single, specific statement that she thought violated that statute.

Further, looking at the statute and Louisiana case law, it is clear that none of the allegedly harassing statements could satisfy counts of conviction under the statute:

---

[28] *Piazza*, 217 F.3d at 246 ("When determining whether a reasonably cautious person would have believed that a violation occurred, we consider the expertise and experience of law enforcement officials.").

[29] Judge Wolfe only admits that she "may have" discussed probable cause with Detective Aguillard.

B. Cyberstalking is action of any person to accomplish any of the following:

. . .

(2) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying, or harassing any person.

(3) Electronically mail or electronically communicate to another and to knowingly make any false statement concerning death, injury, illness, disfigurement, indecent conduct, or criminal conduct of the person electronically mailed or of any member of the person's family or household with the intent to threaten, terrify, or harass.[30]

Only one statement arguably violated this statute. Most of the statements concern Daniel Hoover's visitation rights and financial concerns and obligations. The only potentially incriminating language was in a communication sent by Scott Lemoine to third parties which stated that he wanted to "tie [Lori] down and call an exorcist." While inconsiderate, such a childish insult cannot form the foundation of a criminal charge. The Lemoines have produced sufficient evidence that Judge Wolfe, a state court judge, encouraged the prosecution and informed the investigating detective that there was probable cause to arrest Scott Lemoine despite the fact that she could not point to a single statement that allegedly violated the statute. The evidence creates a genuine issue of material fact as to whether Judge Wolfe had an "honest and reasonable belief" that there was probable cause to arrest Scott Lemoine.

---

[30] LA. REV. STAT. ANN. § 14:40.3. Based on the text and the record neither subsection (1) or (4) would seem to be applicable in this case.

No. 13-30178

## C

Similar to probable cause, Louisiana creates a presumption of malice if a prosecutor has dismissed the charges.[31]  "Any feeling of hatred, animosity, or ill will toward the plaintiff . . . amounts to malice.  But it is not essential to prove such ill will."[32]  Malice may be inferred when there is a lack of probable cause or when the defendant acted in reckless disregard of the other person's rights.[33]  Further, malice may also be found if "the defendant uses the prosecution for the purpose of obtaining any private advantage."[34]  Like probable cause, since the determination of malice is a question of fact, the issue should be determined by the trier of fact unless only one conclusion may be reasonably drawn from the evidence.[35]

The Lemoines argue that they have satisfied the element of malice. First, there is the presumption of malice that arises if there is no probable cause.  Second, they argue that there was evidence of Judge Wolfe's ill will or bad faith.  Judge Wolfe initially pressed for the prosecution of Scott Lemoine on dubious charges, and she protested when the prosecutor decided to dismiss the case.  After the District Attorney told Judge Wolfe that he would be dismissing the charges, Judge Wolfe admitted that she was upset—not necessarily because she thought he was guilty—but because, "I felt like we

---

[31] *Hope*, 862 So. 2d at 1143 ("[T]he dismissal of the prosecution gives rise to the presumption of a lack of probable cause and shifts [the] burden to the defendants to show that [the defendant] acted on probable cause and without malice . . . .").

[32] *Miller v. E. Baton Rouge Parish Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987) (internal citations omitted).

[33] *Id.*; *see also Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996).

[34] *Jalou II, Inc. v. Liner*, 2010-0048 (La. App. 1 Cir. 6/6/10); 43 So. 3d 1023, 1040 (citing *Miller*, 511 So. 2d at 452).

[35] *Miller*, 511 So. 2d at 453.

were going to be in a federal lawsuit if they didn't do something . . . . I thought we were going to be in a federal lawsuit, just as we are today, if they just dismissed the case without going forward." Urging the continuation of a prosecution for this purely private benefit satisfies the element of malice.

Finally, there is circumstantial evidence that Judge Wolfe may have intervened in changing the bail conditions for Scott Lemoine to imprison him indefinitely. Scott Lemoine's bail was quadrupled after Detective Aguillard placed a phone call to Judge Wolfe's husband to discuss setting a higher bail. The magistrate also imposed the GPS bracelet condition when he increased the amount of bail. Since no GPS tracking bracelet was available, this effectively meant that Scott Lemoine was held without bond. The magistrate judge stated that his decision to impose these requirements was not the result of Judge Wolfe's influence, but there is enough evidence to raise a genuine issue of material fact on this issue. This does not seem to be a case where Judge Wolfe "merely reported" suspected criminal activity to law enforcement.[36] Rather, there is circumstantial evidence that she was involved in the prosecution and imprisonment of Scott Lemoine in a personal and direct way. The evidence presented "does not preclude the determination that . . . malice was present."[37] Nor has Judge Wolfe presented any evidence that rebuts the presumption of malice under Louisiana law. Therefore, summary judgment on this element would be inappropriate as well.

---

[36] *Jalou II, Inc.*, 43 So. 3d at 1040 (no malice where defendants "merely reported their suspicions to law enforcement personnel").

[37] *Smith v. State ex rel. Dep't of Admin.*, 96-0432 (La. App. 1 Cir. 5/9/97); 694 So. 2d 1184, 1188-89.

No. 13-30178

**D**

The Lemoines have created a genuine issue of fact regarding damages. Scott Lemoine was arrested for cyberstalking as a result of this prosecution. The portion of his incarceration in state custody was solely due to the prosecution of his cyberstalking charge. This represents sufficient evidence of damages to avoid summary judgment.[38]

**E**

This leaves one remaining element that the Lemoines must satisfy to avoid summary judgment: whether the dismissal of his charge counts as a bona fide termination of the prosecution in his favor. As this question presents an issue of state law that is unanswered by the Louisiana Supreme Court, the United States Court of Appeals for the Fifth Circuit, on its own motion, invokes Louisiana Supreme Court Rule XII. Louisiana Supreme Court Rule XII provides for certification to that court when there are "questions or propositions of law of [Louisiana] which are determinative of said cause . . . [and] there are no clear controlling precedents in the decisions of the supreme court of [Louisiana]."[39] Certification may be invoked by "any circuit court of appeal of the United States upon its own motion."[40] While we are aware that "[c]ertification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state,"[41] we nevertheless conclude that certification is advisable in this case

---

[38] *E.g.*, *Watson v. Church's Fried Chicken, Inc.*, 527 So. 2d 979, 980 (La. Ct. App. 1988).

[39] LA. SUP. CT. R. XII § 1.

[40] *Id.* § 2.

[41] *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2009) (alteration in original) (quoting *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992)).

No. 13-30178

because "important state interests are at stake and the state courts have not provided clear guidance on how to proceed."[42]

Because we have held that the Lemoines have produced sufficient evidence of every other element of a malicious prosecution action to avoid summary judgment, the dispositive issue in this case is whether the dismissal of Scott Lemoine's criminal cyberstalking prosecution under Louisiana Code of Criminal Procedure article 691 constituted a bona fide termination in his favor. The Louisiana Supreme Court has not answered this question directly. There are conflicting cases from the turn of the twentieth century that suggest opposite conclusions.[43] This Court did hold in *Deville v. Marcantel*[44] that a "procedural dismissal of the charges, even if the dismissal is with prejudice, does not satisfy [the bona fide termination] element of the cause of action."[45] This conclusion constituted an *Erie* guess that relied upon and extended the holding of the Louisiana Supreme Court case of *Savoie v. Rubin*.[46] *Savoie* did not state that a *nolle prosse* could not function as a bona fide termination. Rather, *Savoie* held that a dismissal with prejudice for improper venue could not be "equated to a bona fide termination of the underlying litigation."[47] The court reached this result because it found that the "obvious purpose of the bona fide termination requirement" was that the "underlying litigation . . . be

---

[42] *Id.* (quoting *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 274 (5th Cir. 1999)).

[43] *Compare Banken v. Locke*, 66 So. 763, 764 (La. 1914) ("In this instance it appears that the prosecution had terminated in a nolle prosequi entered by the district attorney; and plaintiff therefore had the right to institute this suit in damages."), *with Irby v. Harrell*, 74 So. 163, 163 (La. 1917) (holding that a procedural dismissal, which does not bar subsequent prosecution, does not satisfy bona fide termination requirement).

[44] 567 F.3d 156 (5th Cir. 2009) (per curiam).

[45] *Deville*, 567 F.3d at 173.

[46] 2001-3275 (La. 6/21/02); 820 So. 2d 486.

[47] *Savoie*, 820 So. 2d at 489 (internal quotation marks omitted).

brought to a conclusion on the merits before a malicious prosecution suit . . . is allowed to proceed."[48]  In *Deville*, we understood this language to intimate that only a judgment on the merits could serve as a bona fide termination and a *nolle prosse* was not judgment on the merits but simply a unilateral dismissal of the charge by the prosecutor.[49]

But the *Erie* guess ventured by the panel in *Deville* is problematic.  First, it contradicts the conclusions of a number of Louisiana circuit courts. Louisiana circuit courts have repeatedly found that a district attorney's dismissal of a prosecution under article 691 satisfies the bona fide termination element of a malicious prosecution claim.[50]  These cases both predate and postdate the Louisiana Supreme Court's decision in *Savoie* and our decision in *Deville*.[51]  While interpretations of Louisiana law by state circuit courts are not binding on this circuit if we find them unpersuasive or determine that the state's high court would decide the issue differently,[52] the amount of contrary

---

[48] *Id.* at 488 (internal quotation marks omitted).

[49] *Deville*, 567 F.3d at 173.

[50] *E.g.*, *LeBlanc v. Pynes*, 46,393 (La. App. 2 Cir. 7/13/11); 69 So. 3d 1273, 1281 ("A *nolle prosequi* has been held to constitute a bona fide termination."); *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143 ("There was also a bona fide termination of the criminal proceedings in favor of Hope as a result of the dismissal of the prosecution against Hope by the district attorney."); *Amos v. Brown*, 36,338 (La. App. 2 Cir. 9/18/02); 828 So. 2d 138, 142-43 (holding that a nol pros because of abandonment by the complainant/victim was a bona fide termination after *Savoie*); *Watson v. Church's Fried Chicken, Inc.*, 527 So. 2d 979, 981 (La. Ct. App. 1988) (Williams, J., concurring) ("[T]he charges were dismissed.  This constituted a termination, indeed a bona fide termination, of the proceedings against him."); *Allen v. State*, 456 So. 2d 679, 683 (La. Ct. App. 1984) (stating that "the evidence clearly reveals that the charges were dismissed by the district attorney prior to trial" and that this met the element of bona fide termination).

[51] *Compare LeBlanc*, 69 So. 3d at 1281 (decided after both *Savoie* and *Deville*), *Hope*, 862 So. 2d at 1143 (decided after *Savoie* but before *Deville*), *and Amos*, 828 So. 2d at 142 (same), *with Watson*, 527 So. 2d at 981 (decided before both), *and Allen*, 456 So. 2d at 683 (same).

[52] *See Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013) ("If a state's high court has not spoken on a state-law issue, we defer to intermediate state appellate court

circuit precedent in Louisiana brings into question the integrity of our holding in *Deville*.

Not only is the wealth of contradictory circuit precedent troubling, but so too are the consequences of a conclusion that only a judgment on the merits can serve as the basis of a malicious prosecution claim. While it is true that not all frivolous prosecutions are terminated before reaching trial, it is reasonable to suspect that a number of malicious prosecutions are dismissed once the district attorney realizes the weaknesses of the case. To say that such a dismissal can never form the basis of a malicious prosecution claim simply because the prosecutor elected to dismiss the groundless prosecution rather than proceed with a fruitless trial would cut off the right of recovery from a great number of wrongfully prosecuted defendants. For example, in a case such as this one, the dismissal served almost as a determination of the merits. The dismissal of Scott Lemoine's cyberstalking charge was expressly based on the fact that the district attorney had determined that there was "insufficient credible, admissible, reliable evidence remaining to support a continuation of the prosecution."[53]

We have previously held that intervening circuit court opinions may, in certain situations, permit one panel of the court to overrule a prior panel's interpretation of state law.[54] However, rather than perform a second *Erie* guess based on these circuit cases, given that this case presents an issue of Louisiana law that will be dispositive in this appeal and that has not yet been

---

decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise.") (internal quotation marks omitted).

[53] *See* LA. CODE CRIM. PROC. ANN. art. 691.

[54] *See, e.g., Farnham v. Bristow Helicopters*, 776 F.2d 535, 537-38 (5th Cir. 1985).

No. 13-30178

determined by the Louisiana Supreme Court, we elect instead to invoke the certification privilege granted to us by Louisiana Supreme Court Rule XII.

We certify the following question to the Louisiana Supreme Court:

1. Did the dismissal of Scott Lemoine's criminal cyberstalking prosecution pursuant to Louisiana Code of Criminal Procedure article 691 constitute a bona fide termination in his favor for the purposes of this Louisiana malicious prosecution suit?

If the Louisiana Supreme Court accepts this certificate, its answer will determine the outcome of this appeal. We do not intend to confine the reply of Louisiana Supreme Court to the precise form or scope of the legal question certified. We retain cognizance of this appeal while it is pending before the Louisiana Supreme Court and transfer the record and appellate briefs with our certification to the Supreme Court of Louisiana.

\*     \*     \*

QUESTION CERTIFIED.

23