# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #013

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **17th day of March, 2015**, are as follows:

**BY WEIMER, J.**:

2014-CQ-1546      SCOTT D. LEMOINE; BEVERLY P. LEMOINE v. ELIZABETH P. WOLFE (Certified Question From the United States Fifth Circuit Court of Appeals)

We answer the certified question as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court on the question certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.
CERTIFIED QUESTION ANSWERED.
HUGHES, J., dissents with reasons.

03/17/15

# SUPREME COURT OF LOUISIANA

## NO. 2014-CQ-1546

## SCOTT D. LEMOINE; BEVERLY P. LEMOINE

## VERSUS

## ELIZABETH P. WOLFE

*ON CERTIFIED QUESTION FROM THE UNITED STATES*
*FIFTH CIRCUIT COURT OF APPEALS*

**WEIMER**, Justice

Invoking Louisiana Supreme Court Rule XII,[1] the United States Court of

Appeals for the Fifth Circuit certified to this court the following question of law:

> Did the dismissal of Scott Lemoine's criminal cyberstalking prosecution
> pursuant to Louisiana Code of Criminal Procedure article 691 constitute
> a bona fide termination in his favor for the purposes of this Louisiana
> malicious prosecution suit?

**Lemoine v. Wolfe**, 575 Fed. Appx. 449, 463 (5th Cir. 2014). We accepted

certification[2] and, for the reasons set forth below, answer that question as follows:

A dismissal of a criminal prosecution pursuant to La. C.Cr.P. art. 691 will constitute

---

[1] Louisiana Supreme Court Rule XII provides, in relevant part:

> When it appears to ... any circuit court of appeal of the United States, that there are
> involved in any proceedings before it questions or propositions of law of this state
> which are determinative of said cause independently of any other questions involved
> in said case and that there are no clear controlling precedents in the decisions of the
> supreme court of this state, such federal court before rendering a decision may certify
> such questions or propositions of law of this state to the Supreme Court of Louisiana
> for rendition of a judgment or opinion concerning such questions or propositions of
> Louisiana law. This court may, in its discretion, decline to answer the questions
> certified to it.

[2] **Lemoine v. Wolfe**, 14-1546 (La. 10/31/14), 151 So.3d 611.

a bona fide termination in favor of the malicious prosecution plaintiff unless the charge is dismissed pursuant to an agreement of compromise, because of misconduct on the part of the accused or in his behalf for the purpose of preventing trial, out of mercy requested or accepted by the accused, because new proceedings for the same offense have been instituted and have not been terminated favorably to the accused, or when the dismissal is due to the impossibility or impracticality of bringing the accused to trial. Guided by these principles, we leave it for the Fifth Circuit to resolve whether there is sufficient evidence of a factual dispute as to the circumstances surrounding the dismissal of Scott Lemoine's criminal cyberstalking charge to preclude summary judgment on this element of a malicious prosecution cause of action.

## FACTS AND PROCEDURAL HISTORY

The certified question arises from a malicious prosecution action in which the federal district court granted a motion for summary judgment in favor of the defendant, Judge Elizabeth P. Wolfe. The plaintiffs, Scott and Beverly Lemoine, appealed that decision. The facts of the case, as presented by the court of appeals, are consistent with appellate review of a summary judgment, which requires, when assessing whether a dispute exists as to any material fact, that the court refrain from making any credibility determination or weighing the evidence, and that all evidence be viewed in a light most favorable to the non-moving party and all reasonable inferences drawn in the non-moving party's favor. **Lemoine**, 575 Fed. Appx. at 454, *citing* **Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.**, 592 F.3d 687, 690 (5th Cir. 2010), and **Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.**, 739 F.3d 848, 856 (5th Cir. 2014). As a result, the facts we recount below have been

presented to us in a light most favorable to the Lemoines. **Lemoine**, 575 Fed. Appx. at 451.

This case originated in late 2008, when Scott Lemoine took up the cause of his disabled friend, Daniel Hoover. On learning the difficulties Daniel was allegedly having with his ex-wife, Kelly Wolfe, Lemoine authored posts on a local television news website and on Daniel's Facebook page. The posts included a vague suggestion that Kelly's new mother-in-law, Judge Elizabeth P. Wolfe, a Louisiana state district court judge, had involved herself in the judicial system for Kelly's benefit.[3]

Following the publication of these posts, Lemoine engaged in an internet dialogue with Daniel's sister, Lori Hoover Barrient, in which they debated the propriety of Kelly's actions. In September 2009, Lori complained to Detective Toby Aguillard of the Tangipahoa Parish Sheriff's Office that she felt harassed by Lemoine's posts. In November of that same year, Kelly also contacted Detective Aguillard, reporting that she "was being threatened and harassed by Internet postings that were authored by Scott Lemoine and others."

According to the Lemoines, later that month, Judge Wolfe also contacted Detective Aguillard. Judge Wolfe disclosed that she, too, was upset by Lemoine's internet posts. Suggesting that Lemoine's conduct satisfied the elements of the misdemeanor crime of cyberstalking and that Detective Aguillard had probable cause to arrest Lemoine, Judge Wolfe indicated that she wanted the detective to do so.

---

[3] The posts with regard to Judge Wolfe stated:

> [W]hen she [Kelly] said "I do" to her third husband, a fireman, she also became the daughter-in-law of a state district judge.
>
> . . . .
>
> Ultimately, we hope that by exposing this story it will attract the attention of someone who's willing and able to fight for Daniel's best interest, which considers the involvement of a few crooked district judges ....

In December, Detective Aguillard secured an arrest warrant for Scott Lemoine for alleged violations of Louisiana's cyberstalking statute, La. R.S. 14:40.3. The detective then invited Lemoine to stop by the police station. When Lemoine arrived at the station, he was placed under arrest.

Lemoine's bail was initially set at $25,000; however, that amount was later increased to $100,000, and the additional requirement that Lemoine wear a GPS tracking bracelet was imposed. Because there were no tracking bracelets available, Lemoine, who would have been able to post bond, remained incarcerated. At the time of his arrest, Lemoine was under federal supervised release on an earlier, unrelated charge. Following the arrest, his conditional discharge was revoked by a federal district court judge based on the results of an earlier routine drug screen and Lemoine was recommitted to the custody of an out-of-state federal medical center for the next ten months.

Two days following his arrest for cyberstalking, Lemoine was additionally charged with soliciting Judge Wolfe's murder. The charge was based on an accusation by a fellow inmate at the jail, Brian Register, who told authorities that Lemoine had solicited Judge Wolfe's murder and who, as evidence, produced fabricated drawings and letters that he attributed to Lemoine.[4] After turning these materials over to authorities, Register, who had a criminal case pending before Judge Wolfe, penned a letter to the Judge in which he identified himself as the person who "set up" Lemoine and asked: "What should [I] tell [the police]?" Later, Register sent a second letter to Judge Wolfe, thanking her for sending a public defender to meet with him and asking for her assistance in having his bond reduced, stating that he

---

[4] Two handwriting experts, including one retained by the District Attorney, ultimately determined that Register, not Lemoine, had authored the drawings and letters.

could "prove a murder that happened a few years ago." Judge Wolfe gave copies of both letters to the District Attorney. At some point, the originals were placed in Mr. Register's file, but no copies of the letters were placed in Lemoine's file.

Lemoine was formally charged by bill of information with cyberstalking and solicitation of murder on March 12, 2010. On August 24, 2010, a probable cause hearing was conducted on the solicitation for murder charge. The presiding judge found no probable cause to believe that Lemoine had committed the solicitation of murder offense, reduced the bail on the cyberstalking charge to the original amount of $25,000, and removed the GPS bracelet condition. Thereafter, Lemoine's attorney filed a motion to quash the cyberstalking charge. In September 2010, the District Attorney dismissed that charge, citing La. C.Cr.P. art. 691.[5] Lemoine was released from custody on October 13, 2010.

As a result of the foregoing events, Scott Lemoine and his wife, Beverly, filed suit in federal district court against multiple defendants raising multiple claims under federal and state law. Among the claims asserted was a Louisiana tort law claim for malicious prosecution against Judge Wolfe. Judge Wolfe filed a motion for summary judgment as to this claim, alleging that the Lemoines failed to establish all of the elements of the malicious prosecution cause of action. The district court granted Judge Wolfe's motion for summary judgment and the Lemoines appealed.

On appeal, a three-judge panel of the United States Court of Appeals for the Fifth Circuit concluded that the Lemoines produced sufficient evidence to avoid

---

[5] La. C.Cr.P. art. 691 provides, in relevant part:

> The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court. The dismissal may be made orally by the district attorney in open court, or by a written statement of the dismissal signed by the district attorney and filed with the clerk of court. The clerk of court shall cause the dismissal to be entered on the minutes of the court.

5

summary judgment with regard to five of the six elements of a malicious prosecution action.[6]  As to the remaining element the Lemoines must satisfy – whether the dismissal of Scott Lemoine's criminal cyberstalking prosecution under La. C.Cr.P. art. 691 counts as a bona fide termination of the criminal proceeding in his favor – the Fifth Circuit pointed out that in **Deville v. Marcantel**, 567 F.3d 156 (5th Cir. 2009), a different panel of that court had previously ventured an **Erie**[7] guess that relied on and extended the holding of this court in **Savoie v. Rubin**, 01-3275 (La. 6/21/02), 820 So.2d 486, to conclude that only a judgment on the merits in a criminal proceeding can serve as a bona fide termination and that a dismissal pursuant to La. C.Cr.P. art. 691 is not a judgment on the merits, but simply a unilateral dismissal of the charge by the prosecutor.  **Deville**, 567 F.3d at 173.  While acknowledging the **Deville** decision, the Fifth Circuit found its **Erie** guess problematic in light of a number of Louisiana intermediate appellate court decisions that have repeatedly reached a contrary conclusion and ruled that a district attorney's dismissal of a prosecution under La. C.Cr.P. art. 691 satisfies the bona fide termination element of a malicious prosecution action.[8]  Given the amount of contrary precedent in the Louisiana courts of appeal and certain enumerated policy considerations[9] which call

---

[6]  This finding, of course, is not a final determination of the merits of the proceeding, but rather a determination that there is a genuine dispute as to material facts, and that Judge Wolfe is not entitled to summary judgment as a matter of law.  If the case proceeds to trial, it will be the responsibility of the trier of fact to resolve the disputed matters.

[7]  **Erie Railroad Co. v. Tompkins**, 304 U.S. 64 (1938), requires federal courts sitting in diversity jurisdiction to apply state substantive law to state law claims.

[8]  The court cited as examples the decisions in **LeBlanc v. Pynes**, 46,393 (La.App. 2 Cir. 7/13/11), 69 So.3d 1273, 1281; **Hope v. City of Shreveport**, 37,759 (La.App. 2 Cir. 12/17/03), 862 So.2d 1139, 1143; **Amos v. Brown**, 36,338 (La.App. 2 Cir. 9/18/02), 828 So.2d 138, 142-43; **Watson v. Church's Fried Chicken, Inc.**, 527 So.2d 979, 981 (La.App. 4 Cir. 1988); and **Allen v. State**, 456 So.2d 679, 683 (La.App. 5 Cir. 1984).  See **Lemoine**, 575 Fed. Appx. at 462 n.50.

[9]  Recognizing that it is reasonable to suspect that a number of malicious prosecutions are dismissed before reaching trial once the district attorney realizes the weakness of the case, the Fifth Circuit found it problematic to hold that such a dismissal can never form the basis of a malicious

6

into question the holding in **Deville**, coupled with the lack of definitive guidance from this court on the issue, the Fifth Circuit declined to hazard a second **Erie** guess on what is the dispositive issue in the Lemoines' appeal. Rather, because "important state interests are at stake and the state courts have not provided clear guidance on how to proceed," the Fifth Circuit certified the question stated above to this court.[10]

## LAW AND ANALYSIS

The particular tort alleged in this case is the intentional tort of malicious prosecution. The tort is one that has been recognized since early in the jurisprudence of this state,[11] and while the cause of action in favor of one "whose liberty has been interfered with in an unwarranted manner" derives from the fault-reparation principles of La. C.C. art. 2315, this court has imported certain restrictions and guidelines from the common law in defining the contours of the tort. **Jones v. Soileau**, 448 So.2d 1268, 1271 (La. 1984), *quoting* 12 F. STONE, LOUISIANA CIVIL LAW TREATISE: TORT DOCTRINE, §§ 200-01 at 264-266 (1977). The limitations on the tort imposed by these restrictions reflect a careful balance between two important societal interests: the right of all persons to resort to the courts for redress of wrongs and to be protected when acting in good faith on reasonable grounds in commencing either a civil or criminal proceeding, and the right of an individual to seek redress for the malicious and unwarranted employment of the judicial process against him. See **Miller v. East Baton Rouge Parish Sheriff's Dept.**, 511 So.2d 446, 452 (La. 1987);

---

prosecution action simply because the prosecutor elects to dismiss the groundless prosecution rather than proceed with a fruitless trial. **Lemoine**, 575 Fed. Appx. at 462. Such a holding, the court reasoned, potentially cuts off the right of recovery to a great number of wrongfully prosecuted defendants. *Id.*

[10] **Lemoine**, 575 Fed. Appx. at 461, *quoting* **In re Katrine Canal Breaches Litig.**, 613 F.3d 504, 509 (5th Cir. 2010).

[11] The earliest reported malicious prosecution action we have found dates from 1840. **Maloney v. Doane**, 15 La. 278 (1840).

**Robinson v. Goudchaux's**, 307 So.2d 287, 291 (La. 1975). To effectuate and implement this careful balance, the restrictions and guidelines that have been imported from the common law must be strictly adhered to before an action for malicious prosecution will be upheld. **Robinson**, 307 So.2d at 291. As presently formulated, the elements of the tort of malicious prosecution are:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. [**Jones**, 448 So.2d at 1271.]

The present case concerns itself exclusively with the third element – whether the criminal proceeding that gave rise to this malicious prosecution action (the cyberstalking charge) was terminated in favor of Lemoine – and challenges us to more precisely define the contours of this element of the malicious prosecution claim.

This court has recognized that the purpose of the "bona fide termination favorable to the present plaintiff" requirement in malicious prosecution cases is to insure "that the underlying litigation is brought to a conclusion on the merits before a malicious prosecution suit based on the underlying litigation is allowed to proceed." **Savoie v. Rubin**, 01-3275, p. 4 (La. 6/21/02), 820 So.2d 486, 488. One rationale underlying this requirement is that "termination serves to minimize a threat of civil liability that might chill testimony in the criminal action and to avoid litigation that may become needless if a conviction is obtained." DAN B. DOBBS, PAUL T. HAYDEN, & ELLEN M. BUBLICK, THE LAW OF TORTS § 590 (2d ed. 2011); **Weldon v. Republic Bank**, 414 So.2d 1361, 1364 (La.App. 2 Cir. 1982). The additional element – that termination must be in favor of the accused (*i.e.*, the malicious prosecution plaintiff) – is based on a different rationale. If the accused is convicted,

allowing a malicious prosecution action to proceed would involve a collateral attack on the judgment, which is not permitted. DOBBS ET AL., THE LAW OF TORTS at § 590; see also, e.g., **Heck v. Humphrey**, 512 U.S. 477, 486 (1994) (noting "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").

An acquittal of the accused in a criminal proceeding (or a finding of non-liability in a civil one) following a trial is, of course, a favorable termination that satisfies this element of the malicious prosecution claim. See, e.g., **Muldrow v. Jones**, 85 So.2d 711, 713 (Orl. App. 1956) (acquittal in criminal prosecution is a favorable termination for purposes of malicious prosecution action). But, "[t]he prosecution of a cause does not always involve a trial." **Banken v. Locke**, 6 So. 763, 764 (La. 1914). Short of a trial on the merits, and consistent with the policies underlying the favorable termination requirement, the courts of this state have looked for dispositions that tend to show that the court passed on the merits of the charge in such circumstances as to suggest the innocence or non-liability of the malicious prosecution plaintiff in order to find a favorable termination. See, **Savoie**, 01-3275 at 4; 820 So.2d at 488; **Irby v. Harrell**, 74 So. 163, 163 (La. 1917) ("[T]here must have been an acquittal, or else an abandonment of the prosecution equivalent thereto."). Thus, dismissals of an underlying suit on exceptions of improper venue,[12] or prescription,[13] or for failure to allow discovery[14] have been held insufficient to

---

[12] **Savoie**, 01-3275 at 4-5, 820 So.2d at 488-89 (dismissal of the underlying suit on an exception of improper venue is not a bona fide termination of the underlying litigation in the plaintiff's favor).

[13] **Milling, Benson, Woodward, Hillyer, Pierson and Miller, L.L.P., v. American Marine Holding Co.**, 98-1462, p. 5 (La. App. 4 Cir. 3/3/99), 729 So.2d 139, 142 (dismissal of the underlying suit on an exception of prescription is not a bona fide termination for purposes of a subsequent action for malicious prosecution).

[14] **Terro v. Chamblee**, 95-70, pp. 4-5 (La.App. 3 Cir. 7/19/95), 663 So.2d 75, 77-78 (dismissal of the underlying suit for failure to allow discovery is not a bona fide termination for purposes of a

satisfy the favorable termination requirement; however, the refusal of a grand jury to return an indictment against the malicious prosecution plaintiff,[15] or a dismissal after the trial court found no probable cause for an arrest at a preliminary examination[16] or after receipt of exculpatory polygraph test results[17] have been recognized as favorable terminations.

The question we are asked to resolve in this case entails one of the circumstances in which the dismissal of an underlying criminal proceeding is obtained prior to a full-blown trial on the merits. More precisely, we are asked to determine whether the voluntary dismissal of criminal charges pursuant to La. C.Cr.P. art. 691 (a *nolle prosequi*) is a bona fide termination in the plaintiff's favor for purposes of a subsequent malicious prosecution action.

In making this determination, we do not write on a blank slate. The court first addressed the issue in 1893, in the early case of **Garnier v. Bernard**, 14 So. 189 (La. 1893). There, in affirming a judgment in favor of the defendant, the court noted that the plaintiff's petition contained the "essential averments" of a malicious prosecution claim – "malice, want of probable cause, and the termination of the prosecution by a nolle prosequi duly entered." *Id*. The facts as recited by the court reveal that "the prosecuting attorney filed an information against the plaintiff, but, ascertaining same

---

subsequent action for malicious prosecution) (plurality).

[15] **Winn v. City of Alexandria**, 96-492, p. 5 (La.App. 3 Cir. 11/20/96), 685 So.2d 281, 284 (grand jury's refusal to indict plaintiff in a malicious prosecution action is a favorable termination for purposes of the subsequent malicious prosecution claim).

[16] **Hope v. City of Shreveport**, 37,759, pp. 3-5 (La.App. 2 Cir. 12/17/03), 862 So.2d 1139, 1142-1143 (District Attorney's dismissal of charge following preliminary examination in which trial court found no probable cause for the plaintiff's arrest is a bona fide termination of the criminal proceedings for purposes of the subsequent malicious prosecution claim).

[17] **Miller v. East Baton Rouge Parish Sheriff's Department**, 511 So.2d 446, 451-53(La. 1987) ("It is not disputed" that the trial court's dismissal of charges after receiving a letter from the arresting officer urging dismissal based on the results of favorable polygraph tests satisfied the bona fide termination requirement for purposes of malicious prosecution action).

to be defective, he entered a nolle prosequi for the purpose of recasting the bill. Thereafter the prosecution was renewed by the filing of another information .... This second information was subsequently nolle prosequied [sic] likewise, and the plaintiff was not subsequently prosecuted." *Id.* at 190. Thus, in **Garnier**, the court recognized that a *nolle prosequi*, coupled with the failure of the district attorney to renew the prosecution, satisfied the "essential averment" of a malicious prosecution action that there be a favorable termination of the underlying criminal proceeding.

**Garnier** was soon followed by the decision in **Banken v. Locke**, *supra*. In **Banken**, the court rejected the contention that a plaintiff whose underlying criminal prosecution was terminated because of a *nolle prosequi* by the district attorney without a trial on the merits and without an acquittal failed to state a cause of action for malicious prosecution, noting "[s]uch action on the part of the district attorney [entry of the nolle prosequi] may not be a final disposition of the cause, but it (the cause) is terminated for the present."[18] **Banken**, 66 So. at 764. Pointing out that "[t]he prosecution of a cause does not always involve a trial," the court held: "In this instance it appears that the prosecution had terminated in a nolle prosequi entered by the district attorney; and plaintiff therefore had the right to institute this suit in damages." *Id.*

Under **Garnier** and **Banken**, the rule thus emerged that the formal abandonment of criminal proceedings via the entry of a *nolle prosequi* by the district attorney, coupled with the failure of the district attorney to re-institute charges, is a

---

[18] Such a holding is entirely consistent with the dismissal of a prosecution pursuant to La. C.Cr.P. art. 691. Effects of dismissal under La. C.Cr.P. art. 691 are described in La. C.Cr.P. art. 693: "Dismissal by the district attorney of an indictment or of a count of an indictment, discharges that particular indictment or count." While the dismissal is not a bar to subsequent prosecution under La. C.Cr.P. art. 693 unless trial has commenced, the dismissal does terminate the charges pending against the defendant and precludes the State from prosecuting the defendant under the charging document that was dismissed. See La. C.Cr.P. art. 693(1) and (2).

11

bona fide termination in favor of the accused for purposes of the malicious prosecution action. This rule, however, proved not to be absolute.

**Irby v. Harrell**, *supra*, carved out an exception to the general rule in circumstances in which the criminal charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise. Recognizing that there are circumstances in which a prosecution may be dismissed without reaching the merits of the underlying proceeding, the court held, consistent with the purpose behind the favorable termination requirement (*i.e.*, that there be some disposition of the underlying proceeding indicative of the innocence of the accused) that "there must have been an acquittal, or else an abandonment of the prosecution equivalent thereto" for the maintenance of a malicious prosecution suit. **Irby**, 74 So. at 163. In a case such as the one before it, where the prosecution was abandoned, but only as a result of a compromise, the court held that a malicious prosecution action would not lie. *Id.* In such a case, while there has been a termination of the proceeding, the question of the accused's guilt or innocence has been left open by the accused's acceptance of the compromise.

In certifying the question presently before this court, the Fifth Circuit posited that the decisions in **Banken** and **Irby** are "conflicting" and "suggest opposite results." **Lemoine**, 575 Fed. Appx. at 461 n.43 and accompanying text. Respectfully, we do not agree. To the contrary, the holdings reflect the rule followed in a majority of jurisdictions and set forth in the American Law Institute's Restatement (Second) of Torts. Under the Restatement, for purposes of the termination requirement of a malicious prosecution claim, a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, (as in **Garnier** and **Banken)** <u>unless</u> the abandonment is for reasons not

indicative of the innocence of the accused, such as when the *nolle prosequi* is the result of an agreement or compromise with the accused (as in **Irby**), misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial. RESTATEMENT (SECOND) OF TORTS §§ 659, 660, 661 (1977).

A review of the cases emanating from the courts of this state confirms that Louisiana has consistently followed a version of the Restatement principles outlined above. Compare, **Leblanc v. Pynes**, 46,393, pp.11-12 (La.App. 2 Cir. 7/13/11), 69 So.3d 1273, 1282 (finding that *nolle prosequi* constituted a bona fide termination and noting that the detective involved in the criminal investigation testified that the dismissal of the criminal charges was based on a lack of evidence); **Hope v. City of Shreveport**, 37,759, pp. 4-5 (La.App. 2 Cir. 12/17/03), 862 So.2d 1139, 1142-43 (finding bona fide termination in favor of malicious prosecution plaintiff element satisfied where criminal proceedings had been dismissed by the district attorney after the trial court found no probable cause at a preliminary hearing); **Amos v. Brown**, 36,338, pp. 5-6 (La.App. 2 Cir. 9/18/02), 828 So.2d 138, 142-43 (noting that "a *nol pros* implies a 'bona fide' termination in favor of" the malicious prosecution plaintiff where the *nolle prosequi* had not been obtained as part of a bargained-for dismissal, but because of abandonment by the victim); **Plessy v. Hayes Motor Co., Inc.**, 31,947, pp. 5-6 (La.App. 2 Cir. 6/16/99), 742 So.2d 934, 939 (dismissal of criminal charge evidenced by court minutes indicating only that the charge was dismissed by the district attorney was sufficient to establish a bona fide termination of the criminal proceedings); **Watson v. Church's Fried Chicken, Inc.**, 527 So.2d 979, 981 (La.App. 4 Cir. 1988) (dismissal of charges following a court appearance constituted

13

a bona fide termination in favor of malicious prosecution plaintiff); **Arceneaux v. Copes**, 497 So.2d 1037, 1039-40 (La.App. 3 Cir. 1986) (bona fide termination in favor of malicious prosecution plaintiff was satisfied where a *nolle prosequi* was entered on the day of trial without explanation by prosecutor); **Allen v. State**, 456 So.2d 679, 681, 683 (La.App. 5 Cir. 1984) (bona fide termination element proved where charges were dismissed by district attorney prior to trial for insufficient evidence); **Steadman v. Sladovich**, 430 So.2d 816, 818 (La.App. 5 Cir. 1983) (stating that the dismissal of charges by the district attorney is a termination of the proceeding in plaintiff's favor for purposes of the malicious prosecution cause of action); **Harvey v. Bertaut**, 303 So.2d 211, 212 (La.App. 4 Cir. 1974) (termination in favor of the plaintiff found where the district attorney entered a *nolle prosequi* for reason of insufficient evidence and no further prosecution was had); with **Glisson v. Biggio**, 74 So. 907, 910 (La. 1917) (minute entries showing that the district attorney moved for dismissal of the underlying criminal proceeding after "reciting that an agreement had been entered into by all parties" and a compromise reached, were deemed to preclude a subsequent malicious prosecution action, as the abandonment of the prosecution under such circumstances was not the equivalent of an acquittal, or indicative of the accused's innocence, but was instead entered "with the consent of all parties in interest"); **Guidry v. Savoie**, 115 So. 277, 278 (La. 1927) (finding no abandonment "in the manner required by law" of the prosecution of the underlying criminal proceeding for purposes of a malicious prosecution action where a compromise was reached between the parties without the sanction of the district attorney, the payment of costs, and "the dismissal of the charge by a nolle prosequi duly entered.").

Our decision in **Savoie v Rubin**, *supra*, does not compel a conclusion different from the Restatement's approach. That case arose under unique facts: Dr. Richard Rubin filed identical suits against his former attorney, Ronald Savoie, in two venues – Orleans Parish (**Rubin I**) and Jefferson Parish (**Rubin II**). Mr. Savoie filed an exception of improper venue in the Orleans Parish suit (**Rubin I**) which the district court granted, dismissing the suit with prejudice. Upon dismissal of **Rubin I** – and, significantly, while **Rubin II** remained pending in Jefferson Parish – Mr. Savoie filed a malicious prosecution and defamation suit against Dr. Rubin in Orleans Parish, alleging that Dr. Rubin made false accusations in **Rubin I**. Dr. Rubin filed exceptions of prematurity and no cause of action to Mr Savoie's suit, arguing that because **Rubin II** was still pending in Jefferson Parish, Mr. Savoie's suit was premature and he did not have a cause of action for malicious prosecution. The district court denied the exceptions, and the court of appeal affirmed. This court reversed in a per curiam opinion. **Savoie**, 01-3275 at 1-3, 820 So.2d at 486-88.

In **Savoie**, this court held that "the district court's dismissal of **Rubin I** based on an exception of improper venue cannot be equated to a 'bona fide termination' of the underlying litigation in Mr. Savoie's favor." ***Id.***, 01-3275 at 5, 820 So.2d at 489. In reaching this conclusion, the court rejected the contention that an interlocutory judgment of dismissal based on venue could be transformed into a final judgment for purposes of the bona fide termination requirement simply by including the words "with prejudice." ***Id.***, 01-3275 at 4, 820 So.2d at 488. This conclusion was reinforced by the fact that the underlying litigation remained pending in **Rubin II** despite the dismissal of **Rubin I**. ***Id.***, 01-3275 at 4 n.4, 820 So.2d at 488 n.4. In ruling that the bona fide termination requirement had not been satisfied under these facts, the court commented that "[t]he obvious purpose of the 'bona fide termination'

requirement in malicious prosecution cases is that the underlying litigation should be brought to a conclusion on the merits before a malicious prosecution suit based on the underlying litigation is allowed to proceed." ***Id.***, 01-3275 at 4, 820 So.2d at 488.

The Fifth Circuit seized upon **Savoie**'s "conclusion on the merits" language in **Deville v. Marcantel**, *supra*, to venture the **Erie** guess that a voluntary dismissal through the *nolle prosequi* cannot be a bona fide termination under Louisiana law because it is "a procedural dismissal of the charges without prejudice." **Deville**, 567 F.3d at 173. However, this court's choice of words in **Savoie** does not bear the weight attached by the federal court, nor should the language be interpreted so narrowly. **Savoie** did not alter **Garnier** and **Banken**'s recognition that a *nolle prosequi* of criminal charges can constitute a bona fide termination in favor of the malicious prosecution plaintiff. Rather, in holding that a dismissal with prejudice based on an exception of improper venue cannot be equated to a bona fide termination of the underlying proceeding for purposes of a subsequent malicious prosecution suit, the court merely re-affirmed the prevailing rule in the Louisiana jurisprudence that looks to dispositions that tend to show the court passed on the merits of the underlying charge in such circumstances as to suggest the innocence or non-liability of the malicious prosecution plaintiff in order to find a favorable termination. **Savoie** did not change the law.

Based on our review of the jurisprudence, therefore, we find that insofar as the dismissal of criminal prosecutions under La. C.Cr.P. art. 691 is concerned, Louisiana, like the majority of jurisdictions, adheres to the legal precepts set forth in the Restatement and the comments thereto with respect to this issue. See RESTATEMENT (SECOND) OF TORTS §§ 659, 660, 661.

16

With this rule established, we turn to the more specific issue presented by the certified question: whether the Lemoines have produced sufficient evidence of a bona fide termination of the cyberstalking prosecution in Mr. Lemoine's favor to avoid summary judgment. As discussed above, the ultimate consideration in any case in which criminal charges have been dismissed by the district attorney pursuant to La. C.Cr.P. art. 691 is whether the circumstances surrounding the dismissal of the criminal proceeding support an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution. In **Amos v. Brown**, *supra*, the court of appeal recognized, correctly, that under our jurisprudence, a *nolle prosequi* "implies a 'bona fide' termination in favor of [the accused]; that is, one that indicates his innocence." **Amos**, 36,338 at 6, 828 So.2d at 142. Therefore, the court reasoned, once Mr. Amos (the malicious prosecution plaintiff in that case) submitted court minutes showing abandonment of the prosecution by the complainant, the burden shifted to the defendant to present evidence to the contrary, and "the issue became one for the trier of fact to decide." *Id.* This rule applies for purposes of evaluating the instant case.[19]

In the present case, through her motion for summary judgment, Judge Wolfe attempts to establish that the criminal cyberstalking prosecution was dismissed, not for reasons consistent with Lemoine's innocence, but because prosecution was impossible or impractical due to Lemoine's commitment to an out-of-state federal medical center. See RESTATEMENT (SECOND) OF TORTS § 661. To this end, she

---

[19] This rule should not be construed to indicate, however, that in order to prevail on this element of the malicious prosecution action it is incumbent on the plaintiff to offer the district attorney's testimony as to the reasons for using his or her prosecutorial discretion to dismiss the case. Rather, it is sufficient if the circumstances surrounding the entering of the *nolle prosequi* are consistent with a conclusion that there was a lack of reasonable grounds for pursuing the criminal prosecution. See, e.g., **LeBlanc v. Pynes**, 43,393 at 11, 69 So.3d at 1282.

submitted in support of her motion for summary judgment an affidavit from an assistant district attorney (the ADA). In that affidavit, the ADA attests to his reasons for dismissing the charges that were pending against Lemoine. He avers that with respect to the cyberstalking charge, "the policy of the District Attorney is to not extradite a defendant for misdemeanor offenses," and that "[h]ad Mr. Lemoine been in Tangipahoa Parish, the District Attorney's office would have moved forward."[20] As to the solicitation for murder charge, which was also dismissed pursuant to La. C.Cr.P. art. 691, the ADA attests that "after the Bill of Information was filed, it was discovered that Brian Register fabricated evidence necessary to convict Mr. Lemoine." According to the ADA, "[w]ith regard to both matters, the merits of the prosecution of Scott Lemoine were not reached and the charges were procedurally dismissed within my discretion under Louisiana Code of Criminal Procedure Article 691."

In opposing the motion for summary judgment, Lemoine offered copies of the motions to dismiss filed by the ADA in the criminal proceedings on September 14 and 15, 2010. With respect to the cyberstalking charge, the motion to dismiss offers no explanation for the *nolle prosequi*. With respect to the solicitation for murder charge, the motion to dismiss recites: "Due to information received since the filing of the bill of information herein, there is insufficient credible, admissible, reliable evidence remaining to support a continuation of the prosecution of defendant." As Lemoine points out, this latter averment, far from constituting a procedural dismissal not reflecting the merits (as the ADA suggests in his affidavit), is precisely the type of averment that evidences a dismissal on grounds consistent with the defendant's

---

[20] From approximately March 24, 2010, until his discharge in October 2010, Lemoine was in the custody of an out-of-state federal medical center.

18

innocence.  As to the cyberstalking charge, Lemoine argues that the *nolle prosequi* was entered shortly after the filing of a Motion to Quash by his counsel arguing that the internet postings that formed the basis of the charge do not violate the relevant statute and were protected free speech.  This timing, Lemoine argues, supports the inference that the charges were dismissed in response to the meritorious motion. Lemoine points out that the affidavit from the ADA suggesting a contrary reason for the dismissal was not submitted until two years after the *nolle prosequi*, in response to the federal lawsuit, and after Judge Wolfe had counseled the ADA against dismissing the charge out of fear that just such a lawsuit would be filed.  Finally, Lemoine points out that after he was released from federal custody on October 12, 2010, the district attorney had over five months in which to re-institute the cyberstalking prosecution,[21] but elected not to do so.  Lemoine argues that this failure to re-institute charges casts doubt on the contention that the sole reason for dismissing the prosecution was a policy of not seeking extradition for misdemeanor charges.

Having resolved the legal issue certified by the Fifth Circuit by opining that a *nolle prosequi* will constitute a bona fide termination in favor of the accused for purposes of the malicious prosecution cause of action where the circumstances surrounding the dismissal of the criminal proceeding support an inference that there existed a lack of reasonable grounds to pursue the criminal proceeding, we leave it for the court of appeals to resolve the remaining issue: whether, based on the record, there is sufficient evidence of a factual dispute as to the circumstances surrounding

---

[21]  La. C.Cr.P. art. 576 provides that "[w]hen a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney ... a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer."

the dismissal of the cyberstalking prosecution to preclude summary judgment on this element of the malicious prosecution claim. See RESTATEMENT (SECOND) OF TORTS § 673 cmt. (2) (describing that in an action for malicious prosecution, while it is the function of the court to determine whether the proceedings were terminated in favor of the plaintiff, in the event of a triable issue, it is the function of the trier of fact to determine the circumstances under which the proceedings were terminated.).

## CONCLUSION

We answer the certified question as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court on the question certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.

**CERTIFIED QUESTION ANSWERED.**

03/17/15

SUPREME COURT OF LOUISIANA

NO. 2014-CQ-1546

SCOTT D. LEMOINE; BEVERLY P. LEMOINE

VERSUS

ELIZABETH P. WOLFE

ON CERTIFIED QUESTION FROM THE UNITED STATES
FIFTH CIRCUIT COURT OF APPEALS

Hughes, J., dissenting.

I respectfully dissent and would find that the dismissal of the prosecution due to a policy of not extraditing misdemeanor defendants does not constitute a bona fide termination in favor of the malicious prosecution plaintiff.