STELLA MARIS            *       NO. 2022-CA-0696
CONDOMINIUM
ASSOCIATION, INC.        *

                           **COURT OF APPEAL**

**VERSUS**              *

                           **FOURTH CIRCUIT**

**DAVID TRAUTENBERG**     *

                           **STATE OF LOUISIANA**

                * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-09686, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge
Rachael D. Johnson)

Elizabeth A. Roussel
Erica P. Sensenbrenner
ADAMS AND REESE LLP
701 Poydras Street
Suite 4500
New Orleans, LA 70139


       COUNSEL FOR PLAINTIFF/APPELLEE


Justin E. Alsterberg
JJC Law, LLC
3914 Canal Street
New Orleans, LA 70119


       COUNSEL FOR DEFENDANT/APPELLANT

                                   **AFFIRMED**
                             **APRIL 12, 2023**

This case involves a dispute between a condominium unit owner and the condominium association. Appellant David Trautenberg appeals from the trial court's June 30, 2022, judgment, which granted Appellee Stella Maris Condominium Association, Inc.'s motion for summary judgment and denied in part Trautenberg's motion for partial summary judgment. The effect of the judgment was to dismiss both parties' claims against each other. For the reasons that follow, this Court affirms.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Stella Maris Condominiums ("the Condominiums") are situated in the New Orleans French Quarter. In 1995, the Stella Maris Condominium Property Regime was created through a Declaration executed and recorded by the owner ("the Declaration"). Additionally, the Stella Maris Condominium Association, Inc. ("the Association") was incorporated as a Louisiana non-profit corporation which, through its board of directors, is the governing body of the Condominiums.

1

In 2018, Trautenberg purchased Unit 7 of the Condominiums, a three-story unit. The ground floor of Unit 7 also opens onto a private patio situated in the interior courtyard of the Condominium, accessible only through Unit 7 and partitioned from the courtyard by a wooden fence. Unit 7's second floor has two sets of French doors set into its exterior wall, overlooking the Condominium's courtyard. This feature has been described by the parties as a "Juliet balcony".[1] The third floor of Unit 7 contains its master bedroom and bathroom, and also provides access to a private rooftop deck accessible only by the owner of Unit 7.

Trautenberg performed substantial renovations to Unit 7 before moving in. During the course of those renovations, Trautenberg discovered damage to the wall separating Unit 7 from the courtyard of the building, which the Association spent approximately $35,000 to repair. Trautenberg also replaced the second floor French doors (forming part of the Juliet balcony) with "marine grade" doors, the cost for which was reimbursed by the Association. Finally, Trautenberg also requested the Association's permission to replace the ground-floor doors providing access to his private patio, and to install a retractable awning above the patio. The Association acceded to Trautenberg's first request, but denied him permission to install a retractable awning.

In early 2019, the Association decided to replace an awning which spanned the exterior wall separating Units 7 and 8 from the courtyard. The Association took

---

[1] A "Juliet balcony" is actually no balcony at all, but rather refers to an elevated French door which is inset with a protective barrier (typically to waist-height), allowing the occupant to open the French door without fear of accidentally falling to the ground below. Thus, a Juliet balcony by definition does not include what is traditionally thought of as a "balcony" (an area that can be physically entered and walked upon).

this action in response to water intrusion and damage to that wall, which the Association had paid to repair, including: the $35,000 spent during Trautenberg's renovations to Unit 7, the replacement of Trautenberg's second-story French doors, and $20,000 spent to repair the exterior wall of Unit 8 (which occurred prior to Trautenberg's arrival). Notably, the expense for the replacement awning was not included in the Association's annual budget, and was not put to a vote of the unit owners.

Over the objections of Trautenberg, the replacement awning was erected on or around February 14, 2020. The replacement awning was larger than the awning previously in place. Trautenberg alleges that, as a result, his patio and second-story French doors (the Juliet balcony) receive less sunlight. To remedy this offense and "reclaim his sunlight", Trautenberg decided that he would like to construct a *true* balcony (one that could be entered through his second-story French doors and walked upon, see footnote 1 above), to be attached to the exterior wall of his unit and over-hanging his ground-floor private patio and a portion of the Condominium courtyard.

Trautenberg began working with an architect to design the new balcony, and on April 27, 2020, submitted his plans, along with a request for permission, to the Association's board of directors. On May 1, 2020, the board unanimously denied Trautenberg's request. In the Association's letter to Trautenberg informing him of the decision, the Association explained that the reasons for its denial were sound and privacy concerns. Specifically, the Association informed Trautenberg that

unlike the Condominium's private patios, which are enclosed by a wooden fence, Trautenberg's proposed balcony would not include a sound barrier between it and the Condominium's courtyard and other units. Second, the Association explained that the proposed balcony would disrupt the privacy of other units and encroach onto the Condominium's common area (the interior courtyard). Finally, the Association noted that Unit 7 already enjoyed the use of a private rooftop terrace.

In response to the Association's denial, Trautenberg redesigned his proposed balcony so that it would overhang only his own private ground-floor patio. However, rather than submitting this new design to the Association, Trautenberg submitted an application to the Vieux Carré Commission ("VCC") for a permit regarding his proposed balcony, submitted on May 18, 2020. The VCC's Architectural Committee set the matter for a public meeting to be held June 9, 2020.

The day before the Architectural Committee's meeting, the Association's president, David Bryan, learned of Trautenberg's pending permit application and informed the rest of the Association's board of directors. Later that day Bryan sent a letter to the VCC on behalf of the Association, informing it that Trautenberg did not have the Association's approval to build the balcony and requesting the matter be removed from the VCC's meeting agenda. The VCC's Senior Building Plans Examiner, Nicholas Albrecht, responded that the permit would be removed from the agenda and would only be considered in the future if Trautenberg could demonstrate the Association's approval.

The following day, June 9, 2020, Trautenberg corresponded with the Director of the VCC, Bryan Block, complaining that the Association lacked legal standing to block his permit application process as they were not party to it, and asking the VCC to disregard future communications from the Association. After consulting with the City's legal department, Director Block advised Trautenberg that "[i]f there are issues between you and your HOA, this will be a civil matter for you to work out, but that will not include the VCC." Mr. Block further informed Trautenberg that, in light of the above, "the VCC will proceed with permitting."

On June 12, 2020, the Association through counsel sent Trautenberg a letter reiterating the Association's denial of permission for him to construct the balcony. In the letter, the Association noted that Trautenberg's proposed balcony "does not fall within the boundaries of Unit 7" and that Trautenberg's patio area and Juliet balcony are "limited common elements … a subset of common elements, which cannot be altered without prior written approval of the Board."

Convinced, however, that he did not need the Association's approval, and having been told by Director Block that the VCC would stay out of the dispute, on October 24, 2020 Trautenberg renewed his attempts to obtain a permit for the balcony. Despite its June 8, 2020, assurances to the Association, the VCC approved Trautenberg's balcony on November 10, 2020. The next day, a member of the Association's board of directors, Jessie Paige, emailed Meghan Murphy, the Building Plans Examiner for the City's Department of Safety and Permits. In his email, Paige informed the Department that Trautenberg did not have the

Association's approval for the balcony and inquired how the Association should proceed to have the application made void. Murphy replied that she "added a red flag to the permit for now and forwarded this along to our legal team for their advice."

On November 13, 2020, Trautenberg sent a letter to the Association informing it that "[u]pon issuance of a City-issued building permit, a fabricated balcony will be erected." The letter goes on to cite the VCC permit identification number, and notified the Association that the permit had been "approved by all the necessary and sufficient parties, the Architectural Commission, Vieux Carre Commission, Building and Safety and Fire Marshall."

That same day, the Association filed suit against Trautenberg, petitioning the court for a temporary restraining order, preliminary injunctive relief, and unspecified damages for breach of contract. Specifically, the Association sought to "enjoin[] the defendant from permanently altering the limited common elements." The temporary restraining order and request for a preliminary injunction were later dismissed without prejudice on Trautenberg's dilatory exception.

On January 15, 2021, Trautenberg filed an Answer to the suit, including reconventional demands against the Association for (1) declaratory relief that he "has the right to modify the balcony structure without Association approval"; (2) damages resulting from the Association's breach of contract regarding the installation of the light-blocking awning; (3) damages resulting from the Association's negligence in installing the light-blocking awning; (4) damages

resulting from the Association's breach of fiduciary duties; and (5) damages resulting from the Association's malicious prosecution in instituting the suit.[2]

After a period of discovery spanning more than a year, the parties submitted opposing motions for summary judgment. The Association's motion was filed on February 4, 2022, and sought to dismiss all of Trautenberg's reconventional demands. On April 28, 2022, Trautenberg submitted a motion for partial summary judgment, seeking (1) dismissal of the Association's sole remaining claim for breach of contract damages; (2) a declaratory judgment that he is entitled to modify his balcony without the Association's approval; and (3) a judgment as to liability only regarding his claims against the Association for breach of contract, negligence, breach of fiduciary duties, and malicious prosecution.

On June 24, 2022, the motions were heard by the trial court, Judge Ervin-Knott presiding. Judge Ervin-Knott granted the relief sought by the Association *in toto*, dismissing all of Trautenberg's claims against the Association.[3] By the same token, Judge Ervin-Knott denied Trautenberg's request for summary judgment regarding same; however, Judge Ervin-Knott granted Trautenberg's request for summary judgment dismissing the Association's sole remaining claim for breach of contract damages, which was unopposed by the Association. The trial court's

---

[2] Additionally, Trautenberg's Answer asserted a third-party demand against Jessie Paige, a member of the Association's board of directors, for tortious interference with contract and intentional/fraudulent misrepresentation.

[3] The Association's motion for summary judgment was joined by Jesse Paige, also seeking dismissal of the claims asserted against him. See footnote 2. However, in his Original Brief to this Court, Trautenberg did not address his claims against Paige, or assign as an error the trial court's dismissal of those claims. Therefore, they are deemed abandoned pursuant to Rule 2-12.4(B)(4), Uniform Rules of Louisiana Courts of Appeal.

judgment was rendered in writing on June 30, 2022, and this timely appeal followed.

## **DISCUSSION**

*Standard of Review*

Appellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern a trial court's determination of whether summary judgment is appropriate. *Maddox v. Howard Hughes Corp.*, 2019-0135, p. 4 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337 (citation omitted).

Louisiana's summary judgment procedure has evolved from disfavored to favored, and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides in pertinent part that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

As this Court recognized in *Bercy v. 337 Brooklyn, LLC*, 2020-0583, pp. 3-4 (La. App. 4 Cir. 3/24/21), 315 So.3d 342, 345:

> La. C.C.P. art. 966(D)(1) provides that on a motion for summary judgment, although the burden of proof rests with the mover, if the mover will not bear the burden of proof at trial, the mover must only point out the absence of factual support for one or more elements essential to the adverse party's claim. The burden then shifts to the adverse party who has the burden to produce factual support sufficient to establish the existence of a genuine issue of

8

material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue of material fact is one as to which reasonable persons could disagree. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81. Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 2017-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). However, "if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Smith*, 1993-2512, p. 27, 639 So.2d at 751. Additionally, "summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts." *Harmonia, LLC v. Felicity Prop. Co., LLC*, 2020-0253, p. 9 (La. App. 4 Cir. 11/25/20), 311 So.3d 521, 528 (quoting *Hogg v. Chevron USA, Inc.*, 2009-2632, 09-2635, p. 10 (La. 7/6/10), 45 So.3d 991, 999).

### Dismissal of Trautenberg's Claim for Declaratory Judgment

In his first assignment of error, Trautenberg contends that the trial court erred in dismissing his claim for a Declaratory Judgment holding that, per the

Condominiums' Declaration, he does not need Association approval to construct his proposed balcony.

When a court interprets the rights or obligations of condominium owners under a condominium declaration, the rules of contract interpretation apply. *Cusimano v. Port Esplanade Condo. Ass'n, Inc.*, 2010-0477, p. 8 (La. App. 4 Cir. 1/12/11), 55 So.3d 931, 936. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046.

In the case *sub judice*, there is no dispute that the contract forming the substantive law between the parties is the Declaration. The Declaration delineates several categories of Condominium property. Section I ("Definitions") provides, in relevant part:

> Common Elements. All that part of Condominium Property (movable or immovable property) which is not within or a part of the individual Units, as such Units are shown on the attached Condominium Plan or described herein … including the Building and all of the elements or component parts thereof desirably or rationally of common use or necessary to the existence, upkeep and safety of the condominium regime established by this Declaration.
>
> * * * * * * *
>
> Limited Common Elements. All Common Elements serving exclusively a single Unit or one or more adjoining Units as an inseparable appurtenance thereto, the enjoyment, benefit, or use of which is reserved to the lawful Occupants of such Unit or Units either in this Declaration, on the Condominium or by the Board. Limited Common Elements shall include, but shall not be limited to: balcony, patio area, parking areas or terrace areas accessible only from a Unit.
>
> * * * * * * *
>
> Unit. Space occupying all or part of a floor or floors in the Building, which space is not owned in common with the Unit Owners of other Units. Each Unit is designated as shown on the Condominium Plan.

10

> Provided, however, that no structural components of the Building … shall be deemed to be part of said Unit.

Whether a piece of Condominium property is considered a Common Element, a Limited Common Element, or a Unit affects a Unit owner's rights and obligations in the property in several ways. Most relevant to this dispute, Section XIII of the Declaration ("Alterations, Additions, or Improvements") limits an owner's rights to improve Condominium property by providing in relevant part:

> [N]o alteration of any Common Elements, or any additions or improvements thereto, shall be made by any Unit Owner without the prior written approval of the Board … [However,] [a]ny Unit Owner may make alterations, additions or improvements within the Unit of the Unit Owner without the prior written approval of the Board.

Both parties argue that the terms of the Declaration unambiguously mandate a ruling in their favor regarding Trautenberg's ability to construct his balcony without the Association's approval. The Association argues that because Trautenberg's balcony project would affect (and thus alter) the external wall of his unit,[4] and because the external wall constitutes a Common Element (as a component part of the Building),[5] that Section XIII of the Declaration requires him to obtain the written approval of the Association. This Court agrees.

---

[4] Trautenberg argues on appeal that the trial court's conclusion that the proposed balcony would affect the exterior wall of the building assumes facts not in evidence. This Court finds no merit to that argument. In Trautenberg's brief to this Court, he himself states that the balcony was designed "to attach to and enhance the rear of his unit." The Court also notes that Trautenberg did not claim that the attachment of his proposed balcony to the wall of the building is a disputed material fact precluding summary judgment.

[5] Trautenberg also argues on appeal that the Association has judicially admitted that the exterior wall of his unit is a Limited Common Element. However, even putting aside the plain language of the Declaration defining the building and its walls as Common Elements, this Court finds no merit to Trautenberg's argument. Trautenberg points to the Association's Petition for Temporary Restraining Order, Injunctive Relief and Damages, which stated that "per the Condominium Declaration, the exterior of [Trautenberg's] Unit is a 'Limited Common Element'." However, this Court does not find this statement to constitute an admission that the exterior *wall* of Trautenberg's unit is a Limited Common Element, but rather referred to his private patio area and/or existing Juliet balcony. This conclusion is supported by the Association's Response to Trautenberg's Statement of Uncontested Facts in Support of Motion for Summary Judgment, which clarified the above-quoted language from the Association's petition: "[t]he Association

Trautenberg argues that his balcony project merely "expands" his existing Juliet "balcony", that the balcony would overhang only his own ground-floor private patio, and that balconies and patios are specifically listed in the Declaration as Limited Common Elements. Trautenberg argues that Section XIII does not require Association approval for alterations, additions, or improvements to Limited Common Elements. In the alternative, Trautenberg argues that the Declaration is ambiguous with regards to improvements to Limited Common Elements, and therefore must be interpreted against its drafter, citing Civil Code Article 2056 ("[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.").

As previously discussed, the Declaration clearly provides that alterations, additions, or improvements to Common Elements require Association approval, while those "within the unit" do not. However, Section XIII is silent regarding an owner's rights to make improvements to Limited Common Elements. Notwithstanding the Declaration's arguably ambiguous silence on this issue, we find that because Section I as well as Section III clearly provide that Limited Common Elements are *subsets* of Common Elements,[6] Association approval is likewise required for improvements thereto. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050.

---

admits that Trautenberg's existing Juliet balcony on his second floor is a Limited Common Element. The Association also admits that the exterior area or patio to Trautenberg's Unit is a Limited Common Element. The Association did not state that the shared exterior wall of Trautenberg's unit is a Limited Common Element." (Emphasis in original).

[6] As quoted above, Section I defines Limited Common Elements as "[a]ll *Common Elements* serving exclusively a single Unit…" Similarly, Section III defines Limited Common Elements as "[t]hose *areas of the Common Elements* consisting of…" (Emphasis added).

Even assuming, *arguendo*, that Trautenberg's balcony would affect only Limited Common Elements and that the Declaration is ambiguous as to improvements affecting only Limited Common Elements, such a determination would not mandate the result advocated by Trautenberg. First, although not squarely on-point, Section XIV of the Declaration provides that "[n]o Unit Owner shall enclose or modify the structure of any Limited Common Elements or decorate the portions of such Limited Common Elements visible from outside such Unit in any manner which detracts from the appearance of the Building", as exclusively determined by the Association's board of directors. Thus, the Declaration clearly limits an owner's rights to make improvements, even where the improvement affects only Limited Common Elements.

Second, "[w]hen the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." La. C.C. art. 2054. The Louisiana Condominium Act, recognized by both parties as applicable, provides that a unit owner "may not change the appearance of the common elements, or the exterior appearance of a unit or any portion of the condominium, without permission of the association." La. R.S. 9:1122.113(2). Here, there can be no doubt that Trautenberg's proposed balcony would change the exterior appearance of his unit as well as that of the Building, a Common Element.

Finally, this Court finds no merit in Trautenberg's argument that an ambiguous contract must be interpreted against its drafter pursuant to Civil Code Article 2056, as that Article limits itself to "cases of doubt that cannot be otherwise

resolved," which, in light of the foregoing, is not the case here. For these reasons, this Court finds that the trial court did not err in dismissing Trautenberg's request for Declaratory Judgment that he did not require the Association's approval to construct his balcony.

### *Dismissal of Trautenberg's Damages Claims*

In his second assignment of error, Trautenberg contends that the trial court erred in dismissing his actions for breach of contract and for negligence regarding the Association's action in replacing the awning on the exterior wall of his unit.[7]

#### *Breach of Contract*

Regarding his breach of contract claim, Trautenberg argues that the Declaration required the Association to obtain the approval of two-thirds of the Condominiums' owners for construction of the awning. Trautenberg relies on Section 8 of the Association's Bylaws, which provides that:

> Except for expenditures and contracts specifically authorized by the Declaration and By-Laws, the Board shall not approve any expenditure not provided for in the Annual Budget in excess of One Thousand and No/100 ($1,000) Dollars, unless required for emergency repair, protection or operation of the Common Elements or Limited Common Elements, nor any contract for more than one (1) year without prior approval of Owners entitled to two-thirds (2/3) of the Votes.[8]

The Association does not dispute that expenses for the replacement awning exceeded one thousand dollars, nor that it did not obtain the prior approval of two-thirds of the Condominiums' owners. Instead, the Association argues that its

---

[7] In his Original Brief to this Court, Trautenberg did not address his claim for breach of fiduciary duties by the Association, or assign as error the trial court's dismissal of that claim. Therefore, that claim is deemed abandoned pursuant to Rule 2-12.4(B)(4), Uniform Rules of Louisiana Courts of Appeal.

[8] Identical language appears in Section VII.7 of the Declaration.

actions did not breach the Bylaws or Declaration because they were necessary for the protection of the building, one of the specifically identified exceptions to the requirement of owners' approval. Specifically, the Association cites the water damage to the exterior wall of units 7 and 8, which the Association had previously spent at least $55,000 to repair, as discussed above.

In response, Trautenberg argues that whether or not there was an "emergency" necessitating the construction of the awning is a genuine dispute of material fact precluding summary judgment. However, as previously noted, "summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts." *Harmonia*, 2020-0253, p. 9, 311 So.3d at 528 (quoting *Hogg,* 2009-2632, 09-2635, p. 10, 45 So.3d at 999). Thus, what constitutes an "emergency" under the Declaration is a legal question appropriate for disposition by summary judgment when, as here, all of the relevant facts are undisputed.

*Negligence*

Regarding his negligence claim, Trautenberg argues that the Association is liable for construction of the awning under either La. R.S. 1123.107 (the Louisiana Condominium Act) or La. C.C. Art. 2317.1 (premises liability).

La. R.S. 9:1123.107, part of the Louisiana Condominium Act, provides in relevant part that "the association is responsible for maintenance, repair, and replacement of the common elements." The trial court held that the Association was not liable to Trautenberg because in constructing the awning it was, in fact, *fulfilling* its duty under La. R.S. 9:1123.107: to maintain the Condominium. In

15

arguing that the Association can be negligently liable to him under that statute, Trautenberg cites *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843 (La. App. 4 Cir. 2/21/18), 241 So.3d 372. In *New Jax*, this Court found that the condominium association could be liable under La. R.S. 9:1123.107 for its negligent repair of the condominium's roof because the repair was faulty and took years to remedy, with the result that one of the units was rendered uninhabitable. *Id.*

This Court recognizes that just because an entity has a duty does not mean it cannot breach that duty by carrying it out in a negligent manner. However, we find *New Jax* distinguishable from the case *sub judice*. This case does not involve the type of negligent repair at issue in *New Jax*, which proximately caused the plaintiff's injuries; rather, Trautenberg argues that the Association was negligent because it (1) failed to consider the harm the awning posed to his unit, (2) failed to discuss the awning with unit owners, (3) used association funds to construct an awning affecting only one unit and failed to reallocate assessments, and (4) failed to obtain permits required for construction of the awning. However, Trautenberg failed to show that the Association did not consider the harm to his unit. In fact, the record reflects that it was consideration of the harm to both Trautenberg's unit and Unit 8 that motivated the Association to erect the awning. Regarding Trautenberg's second ground, as previously discussed, the Association was under no duty to notify or seek the approval of the owners because the awning was necessary to protection of the building. Trautenberg's third ground is self-defeating and contradictory, as the awning clearly affects his unit and was constructed to protect the building, a Common Element shared by the owners indivision. Finally, while the Association's construction of the awning without a permit is questionable, this Court finds that such an omission was not within the scope of the duty owed by the

16

Association to Trautenberg, as the permit requirement was not "intended to protect *this plaintiff* from *this type of harm* arising in *this manner*." *Roberts v. Benoit*, 605 So.2d 1032, 1044-45 (La. 1991) (emphasis in original, quotations and citations omitted).

Trautenberg argues that even if the Association cannot be found liable under La. R.S. 9:1123.107 that "[t]his is not the end of the inquiry", and that the Association can also be liable under La. C.C. Art. 2317.1, colloquially known as "premises liability." Civil Code Article 2317.1 provides in part that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect." However, Trautenberg fails to identify a ruin, vice, or defect in the construction of the awning. "A defect, within the meaning of Article 2317.1, is a condition or imperfection in an object that causes it to present an unreasonable risk of injury to persons exercising ordinary care." *Bercy v. 337 Brooklyn, LLC*, 2020-0583 (La. App. 4 Cir. 3/24/21), 315 So.3d 342, 346 (internal quotation marks and citations omitted). Thus, this court finds no error in the trial court's judgment dismissing Trautenberg's negligence claims.

### *Dismissal of Trautenberg's Malicious Prosecution Claim*

In Trautenberg's third and final assignment of error, he argues that the trial court erred in dismissing his claim for malicious prosecution. Essentially, Trautenberg argues that the Association's action in filing suit for a protective order and preliminary injunctive relief were unwarranted, because the Association had already been informed by the City's Department of Safety and Permits that a "red flag" had been added to Trautenberg's permit application. Additionally, Mr. Trautenberg argues that the Association's claim for breach of contract was baseless, as the Association was unable to show any damages.

> [T]he elements of the tort of malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

*Lemoine v. Wolfe*, 2014-1546, p. 8 (La. 3/17/15), 168 So.3d 362, 367. Initially, this Court will note that, while the Association may have been informed that Trautenberg's permit had been "red flagged", this does not necessarily equate to a lack of probable cause to seek an injunction, particularly given the City's inconsistent position on the matter and Trautenberg's November 13, 2020, letter in which he stated that his balcony had been "approved by all the necessary and sufficient parties."

However, determination of the Association's probable cause is unnecessary in this case, as a claim for malicious prosecution also requires a "bona fide termination [of the defendant's suit] in favor of the present plaintiff." *Id.* While the Association's request for a temporary restraining order, and preliminary injunctive relief were dismissed by the trial court, those dismissals resulted from Trautenberg's dilatory exception, and were without prejudice. The Supreme Court has stated that a bona fide termination requires that "the underlying litigation … be brought to a conclusion *on the merits*," as opposed to "a procedural dismissal of the charges without prejudice." *Lemoine v. Wolfe*, 2014-1546, p. 16 (La. 3/17/15), 168 So.3d 362, 372 (emphasis added). Regarding the Association's breach of contract claim, that claim had not been dismissed at all at the time Trautenberg asserted a claim for malicious prosecution, but rather occurred in the Judgment here under review. Thus, we find no error in the trial court's judgment dismissing Trautenberg's claim for malicious prosecution.

## CONCLUSION

In light of the foregoing, we find no error in the trial court's June 30, 2022, judgment, and accordingly it is hereby affirmed.

**AFFIRMED**